UNITED STATES of America

v.

Ralph GEZELMAN.

No. 06–CR–30022–MAP.

United States District Court,
D. Massachusetts.

Nov. 29, 2007.

Kevin O'Regan, United States Attorney's Office, Springfield, MA, for United States of America.

Jeffrey S. Brown, MacNicol, Tombs & Brown LLP, Greenfield, MA, for Ralph Gezelman.

## MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE (Dkt. No. 17)

PONSOR, District Judge.

### I. INTRODUCTION

Defendant waived indictment and stands charged under a one-count information with being a felon in possession of a firearm. He has filed a motion to dismiss

based upon a violation of the Interstate Agreement on Detainers Act. ("IAD"), 18 U.S.C.App. 2.

At argument, the court expressed an inclination to allow the motion, though without prejudice, based upon a straight-forward reading of the statute. The government's supplemental memorandum, and particularly the Third Circuit's decision in *United States v. Milhollan,* 599 F.2d 518 (3d Cir.1979), has prompted the court to think harder. In the end, however, Justice Breyer's subsequent decision in *Alabama v. Bozeman,* 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001), which unanimously mandated strict application of the IAD even where a violation was *de minimis,* has persuaded the court that dismissal without prejudice is required. The court will therefore allow Defendant's motion.

## II. FACTUAL BACKGROUND

The background facts are a bit complex, due to the unusual geographic scope of Defendant's criminal activity. One irony of this case is that Defendant's multi-state criminal career generated the maze of IAD tripwire that has ultimately benefited him. The events pertinent to the motion may be summarized as follows.

*June 29, 2004:* Defendant was sentenced in Connecticut to four and one-half years imprisonment.

*November 2004:* Defendant was moved from Connecticut, arraigned in Massachusetts, and held locally on state charges. While in Massachusetts custody, Defendant continued to serve his Connecticut sentence.

*2005–2006:* Defendant pursued discussions with Massachusetts state and federal prosecutors regarding his knowledge of criminal activity in Massachusetts and possible cooperation.

*June 2006:* Defendant entered into a plea and cooperation agreement with federal authorities in Massachusetts.

*September 11, 2006:* The felony information currently before this court was filed, charging Defendant with being a felon in possession of a firearm.

*October 13, 2006:* Defendant was taken from Massachusetts state custody and brought to federal court in Springfield, Massachusetts for arraignment on the federal felony information. Following his appearance, Defendant was returned to state custody, and a federal detainer was lodged to insure that, if the Massachusetts state charges were disposed of, federal authorities would be notified to assume custody. The record is not clear whether federal authorities were aware that, although he was physically in Massachusetts state custody, he was currently subject to, and still serving, his Connecticut sentence.

*November 20, 2006:* Defendant pled guilty in Massachusetts state court and received a two- to three-year sentence. This state court sentence was stayed for ninety days.

*February 2, 2007:* Defendant was brought to federal court in Springfield a second time, for a conference regarding counsel. Following the hearing, Defendant was once more returned to Massachusetts state custody.

*February 16, 2007:* Massachusetts returned Defendant to Connecticut to continue serving the four and a half year sentence imposed on June 29, 2004.

*February 18, 2007:* The Massachusetts state court's ninety-day stay of sentence imposed on November 20, 2006 expired.

*April 2007:* Connecticut transferred Defendant to New Hampshire to face charges in that jurisdiction.

*June 6, 2007:* Defendant pled guilty to state charges in New Hampshire.

*June 11, 2007:* Defendant returned to Connecticut to continue serving the sentence imposed on June 29, 2004.

*July 20, 2007:* Defendant filed a Motion to Dismiss the federal felony information, citing a violation of the IAD.

### III. DISCUSSION

At the time of the Supreme Court's *Bozeman* decision, forty-eight states, the federal government, and the District of Columbia had all entered into the IAD. 533 U.S. at 148, 121 S.Ct. 2079. The Agreement "provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State." *Id.* The IAD applies to any prisoner "who is serving a term of imprisonment in any party State." 18 U.S.C.App. 2, § 2, art. IV(a).

In this case, during the applicable time period, the "receiving State" was the federal government operating in the District of Massachusetts and the "sending State" was Commonwealth of Massachusetts, which had physical custody of Defendant.

Defendant has invoked two sections of the IAD: the "120–day" provision and the "anti-shuttling" provision. Article IV(c) of the statute requires that once a prisoner arrives at the receiving State he must be tried within 120 days unless the time period is extended "for good cause." Article IV(e) states that this prompt trial in the receiving State must also take place *before* the prisoner is returned to the sending State.

 The government's initial opposition to the Motion to Dismiss concentrated largely on the well established axiom that the IAD applies only to prisoners serving a sentence of imprisonment and not pretrial detainees. *United States v. Hart,* 933 F.2d 80, 84 (1st Cir.1991). Indeed, the IAD is inapplicable even to prisoners who have been convicted but not yet sentenced *(United States v. Currier,* 836 F.2d 11, 16

(1st Cir.1987)), and also to prisoners whose sentence has commenced but who have not yet been committed to the institution where they will serve their sentence *(Crooker v. United States,* 814 F.2d 75, 77–78 (1st Cir.1987)).

Concentrating solely on Massachusetts (and ignoring Connecticut), the government in its initial submission pointed out that, at the time of Defendant's first appearance in federal court on October 13, 2006 he was being held in the sending State (*i.e.,* Massachusetts) merely as a pre-trial detainee, and that at the time he was brought to the federal court the second time, for a conference regarding his counsel on February 2, 2007, the Massachusetts court had sentenced him but stayed the sentence for ninety days. Under these circumstances, the government contended that the IAD did not apply and Defendant's motion should be denied.

 At oral argument, the court pointed out that the government was ignoring the fact that Defendant, even while within the Massachusetts jurisdiction, was serving a sentence imposed upon him on June 29, 2004 by the state of Connecticut. The IAD applies categorically to any prisoner who is serving a term of imprisonment imposed by *any* party State. *See* 18 U.S.C., App. 2, § 2, art. IV(a). The question raised by this case, therefore, is: does the IAD apply to a prisoner who is serving a sentence imposed by Jurisdiction A (here, Connecticut), but being held as a pre-trial detainee in Jurisdiction B (here, Massachusetts), when he is brought from Jurisdiction B to Jurisdiction C (here, the federal court)?

The government now cites *United States v. Milhollan,* 599 F.2d 518, 527–28 (3d Cir.1979), in support of its argument that an IAD violation should not be found on these facts.[1] In *Milhollan,* the defendant

---

1. The court gave defense counsel an opportu- nity to reply to the government's supplemen-

was a pretrial detainee in Pennsylvania state court (as the current defendant was a pretrial detainee in Massachusetts) when he was brought to federal court in the Western District of Pennsylvania. The defendant at the time was also serving a sentence from the State of Michigan (just as the defendant in this case was serving a sentence from the State of Connecticut), and argued, based upon his sentencing in Michigan, that the provisions of the IAD applied and were violated when he was shuttled between the Pennsylvania state court and the federal court. The facts in *Milhollan* were rendered particularly problematic, because the defendant in that case had previously escaped from custody in Michigan and apparently only notified the federal court of his status as a sentenced Michigan prisoner *after* he had been shuttled between the state and federal court in Pennsylvania. *Id.* at 527.

Despite these difficult facts, the Third Circuit in *Milhollan* held that nothing in the IAD "requires the incarcerating, or sending, state to be the same as the state where the prisoner is 'serving a term of imprisonment.'" *Id.* at 528. Thus, the Court of Appeals concluded, "nothing in the [IAD] itself precludes the interpretation sought by Milhollan." *Id.*

Having held that the IAD facially applied, however, the Third Circuit affirmed the lower court's denial of dismissal on two policy grounds, both of which are offered by the government here. First, according to the court, "the receiving state cannot determine a prisoner's status in any state except that in which he is being held." *Id.* In this case, the government argues that it would be unfair and overly burdensome to expect it to investigate a prisoner's possible custodial status beyond the sending State, Massachusetts. Second, in *Milhol-*

*lan* the Third Circuit noted the policy underlying the IAD—to minimize impact on rehabilitative programs—and concluded that Milhollan had "little interest" as a pretrial detainee in Pennsylvania's programs and "no interest" as an escapee in any of Michigan's rehabilitative efforts on his behalf. *Id.* In the same vein, the government argues here that the shuttles between the Massachusetts state and federal courts could hardly have interrupted any programming in Connecticut, since Defendant was already away from that jurisdiction awaiting disposition of his Massachusetts state charges.

Neither argument is persuasive. First, given the advent of electronic record-keeping, it seems hardly a heavy burden to ask authorities in a receiving State to check a Defendant's custodial status beyond the sending State. Second, and far more importantly, the policy arguments regarding rehabilitation were emphatically rejected in the Court's *Bozeman* decision, where the State of Alabama argued, with some force, that a *one-day* absence from the sending jurisdiction could hardly interfere with any ongoing rehabilitative programming. The Court held that, even if the violation of the IAD were *de minimis*, the language of the IAD, (mandating that the court upon violation "shall" order dismissal of the indictment) constituted "the language of command." *Bozeman* 533 U.S. at 153, 121 S.Ct. 2079. The IAD, in short, means what it says, even when the violation may appear to be merely technical. The Court went on to add, in a portion of the opinion joined by seven of the justices, that the one-day disruption was not, in any event, trivial. *Id.*, at 154–56, 121 S.Ct. 2079.

---

tal memorandum, or at least indicate to the court explicitly that it would not be replying.

No reply of any sort has been received.

Given *Bozeman,* the result in this case is unavoidable. Defendant was a sentenced prisoner, and he was brought into federal court twice in violation of the 120–day and anti-shuttling provisions of the IAD. The policy arguments against dismissal have far less force here than in *Bozeman.*

■ While dismissal is mandated, it is clear that it should be without prejudice. Section 9 of the IAD states that when the receiving State is the United States, as here, dismissal without prejudice is appropriate where (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to dismissal, and (3) the impact of a new prosecution on the administration of the IAD and the administration of justice warrant. This firearms offense is very serious given Defendant's record. Moreover, the circumstances of this case leading to dismissal, involving a third jurisdiction, present an unusual situation and reflect at worst an oversight and certainly no significant neglect on the part of the government. Re-prosecution, if the government chooses, will have no deleterious effect on the administration of the IAD and will serve the interests of justice.

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 17) is hereby ALLOWED, but *without* prejudice.

It is So Ordered.