60 A.3d 821

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. LEON C. GLASPIE A/K/A IRA JONES, DARRELL WASHINGTON, LEON CLARENCE GLASPIE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 2, 2012—Decided February 28, 2013.

Before Judges ALVAREZ, WAUGH and ST. JOHN.

*Brian Plunkett,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney; *Mr. Plunkett,* of counsel and on the briefs).

*Kenneth Burden,* Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General, attorney; *Mr. Burden,* of counsel and on the brief).

The opinion of the court was delivered by

ALVAREZ, J.A.D.

We address the question of whether a defendant who was simultaneously serving a federal sentence and awaiting the disposition of unrelated federal charges may invoke the protection of

the anti-shuttling provisions of the Interstate Agreement on Detainers (IAD), *N.J.S.A.* 2A:159A–1 to –15, in order to obtain dismissal of state charges. *See N.J.S.A.* 2A:159A–4(e).

In 1988, Congress amended the federal counterpart to the IAD vesting in receiving courts the discretion to dismiss charges, based on the anti-shuttling provisions, "with or without prejudice." 18 *U.S.C.A.* app. 2, § 9(1). New Jersey, which adopted the IAD in 1958, did not modify the anti-shuttling language in accordance with the change in federal law. In this state, the IAD continues to require that dismissals, based on violations of the anti-shuttling provision, be with prejudice. *N.J.S.A.* 2A:159A–4(e).

We conclude that the relevant statutory language, identical to the original version of 18 *U.S.C.A.* app. 2, § 2, art. 4(e), requires dismissal. We therefore reverse and remand for the entry of a judgment in accord with this decision.

I

On November 5, 2008, defendant Leon C. Glaspie, while serving a five-year federal sentence for conspiracy to distribute cocaine,[1] 18 *U.S.C.A.* § 371, was granted a furlough from a federal halfway house in Philadelphia, Pennsylvania, to look for work. On that date, along with a co-defendant, he robbed a bank in Deptford, New Jersey, and fled the scene, injuring a police officer along the way. He was not apprehended until November 24, 2008. After the arrest, he was housed in the Philadelphia Federal Detention Center (FDC), where he continued to serve his sentence for the conspiracy while awaiting disposition of the new charge of escape, 18 *U.S.C.A.* § 751.

On January 5, 2009, the Deptford Police Department lodged a detainer against defendant. The IAD is "triggered" when the receiving state files a detainer with the sending jurisdiction and makes a written request for temporary custody. *State v.*

---

[1] Service of the federal sentence ended on November 13, 2009.

*Baker,* 198 *N.J.* 189, 194, 966 *A.2d* 488 (2009). For purposes of the statute, the federal government is considered another state. *N.J.S.A.* 2A:159A–2(a). In early April 2009, Gloucester County indicted defendant for second-degree robbery, *N.J.S.A.* 2C:15–1(a)(2), and second-degree conspiracy to commit robbery, *N.J.S.A.* 2C:5–2, 15–1(a)(2).

On April 27, 2009, the Gloucester County Prosecutor, pursuant to the IAD, submitted a certification in support of a state writ to the United States Department of Justice, Federal Bureau of Prisons, requesting defendant's temporary release to New Jersey authorities. The date scheduled for arraignment on the indictment was June 1, 2009. The Gloucester County Superior Court issued a companion order to produce to the County Sheriff, demanding defendant's delivery to the county jail for purposes of the hearing. Accordingly, on June 1, 2009, defendant was transported, or "shuttled," to Gloucester County, arraigned, and returned to the Philadelphia FDC that same day.[2]

On July 16, 2009, defendant was indicted on the federal escape charge. *See* 18 *U.S.C.A.* § 751. He entered a guilty plea to the offense on August 26, 2009, and on December 15, 2009, was sentenced to twenty-seven months of imprisonment.

In the interim, the Gloucester County Superior Court issued additional writs to produce defendant for proceedings on July 27, August 31, and October 23, 2009. On each occasion, defendant was shuttled from the Philadelphia FDC to New Jersey, and returned the same or the following day.

On February 25, 2010, defendant was transferred to Big Sandy, a federal penitentiary in Inez, Kentucky. The Gloucester County Prosecutor then lodged a second detainer against defendant with Big Sandy. After defendant requested final disposition from New

---

[2] The record is equivocal as to where defendant was being held when the first writ was issued in April 2009; the corresponding court order indicates Fairton, which is a Federal Correctional Institution, while defendant's inmate history states he was held at the Philadelphia FDC.

Jersey under the IAD, he was transported to New Jersey from Kentucky on June 26, 2010. *See N.J.S.A.* 2A:159A–3.

In September 2010, a superseding indictment issued charging defendant with second-degree robbery, *N.J.S.A.* 2C:15–1(a)(2); second-degree conspiracy to commit robbery, *N.J.S.A.* 2C:5–2, 15–1(a)(2); third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(5)(a); and first-degree robbery, *N.J.S.A.* 2C:15–1(a)(1). Defendant's motion to dismiss, based on the violation of the anti-shuttling provision and another section of the IAD, was denied on December 22, 2010. On appeal he only addresses the issue of shuttling.

On March 3, 2011, defendant entered a guilty plea to second-degree robbery on the superseding indictment. He was sentenced on April 15, 2011, to ten years subject to eighty-five percent parole ineligibility in accord with the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

## II

Interpretation of the IAD presents a question of federal law. *State v. Pero,* 370 *N.J.Super.* 203, 214, 851 *A.*2d 41 (App.Div. 2004). The IAD "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime" and "provides for expeditious delivery of [a] prisoner to [a] receiving State for trial prior to the termination of his sentence in [a] sending State." *Alabama v. Bozeman,* 533 *U.S.* 146, 148, 121 *S.Ct.* 2079, 2082, 150 *L.Ed.*2d 188, 192 (2001).

The federal government and forty-eight states, including New Jersey, are signers of the compact. *Ibid.* The IAD's purpose is "to encourage the expeditious and orderly disposition of such [outstanding] charges and determinations of the proper status of any and all detainers based on untried indictments, informations or complaints" and to provide "cooperative procedures" for mak-

ing such determinations. 18 *U.S.C.A.* app. 2, § 2, art. I; *N.J.S.A.* 2A:159A–1.

Transfers between sending and receiving states are authorized by *N.J.S.A.* 2A:159A–4(a):

The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request. . . .

Once "the IAD properly has been invoked according to its terms, both the State and defendant are entitled to its benefits and limited by its burdens." *Baker, supra,* 198 *N.J.* at 194, 966 *A.*2d 488.

The IAD in this case was triggered on April 27, 2009, after the State lodged the initial detainer against defendant and the Gloucester County Prosecutor's Office issued the first writ for his production. *See ibid.*

### III

The following is the relevant anti-shuttling provision:

If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

[*N.J.S.A.* 2A:159A–4(e).]

Defendant contends that a fair reading of this language mandated dismissal of the indictment with prejudice because of the four instances of shuttling in 2009 between the Philadelphia FDC and the Gloucester County court.

■ Defendant relies principally on *Bozeman* in support of his position. We agree. In that case, the defendant was transported from Florida, where he had been serving a federal sentence, to Alabama for arraignment on state charges. After an overnight

stay and arraignment the next morning, he made the eighty-mile trip back to Florida. *Bozeman, supra,* 533 *U.S.* at 151, 121 *S.Ct.* at 2083–84, 150 *L.Ed.*2d at 194. He subsequently filed a motion in Alabama to dismiss his charges under that state's version of the IAD based on Article IV(e), the anti-shuttling provision, and the trial court granted his application. *Id.* at 152–53, 121 *S.Ct.* at 2084, 150 *L.Ed.*2d at 194–95.

The United States Supreme Court affirmed dismissal of the Alabama charges, concluding that the IAD's anti-shuttling provision does not exempt even de minimis violations. Regardless of the brevity of Bozeman's shuttle from Florida to Alabama, the use of the word "shall," the language of command, made dismissal mandatory. *Id.* at 153–54, 121 *S.Ct.* at 2084–85, 150 *L.Ed.*2d at 195. Simply stated, the statutory language requires dismissal, despite the fact the shuttle was merely an overnight trip. *See ibid.*

The United States Supreme Court noted that the anti-shuttling and other provisions of the IAD are no doubt intended to avoid "the 'uncertainties which obstruct programs of prisoner treatment and rehabilitation,' " and therefore the drafters of the IAD "may have sought to minimize the number of 'shuttles' for that reason alone." *Id.* at 155–56, 121 *S.Ct.* at 2086, 150 *L.Ed.*2d at 197 (quoting 18 *U.S.C.A.* app. 2, § 2, art. I).[3]

But as the United States Supreme Court also observed, an additional purpose behind the anti-shuttling policy includes "pro-

---

[3] The legislative history states the IAD is necessary because

a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing. [S. Rep. No. 91–1356, at 3 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4864, 4866.]

vid[ing] the receiving State with an incentive to shorten the pretrial period" because Article V(h) of the IAD "requires the receiving State to pay for the prisoner's incarceration." *Id.* at 155, 121 *S.Ct.* at 2085–86, 150 *L.Ed.*2d at 196. Hence the shuttling of prisoners is inconsistent with that purpose. By returning a prisoner to a sending state, or shuttling him back as happened with Bozeman, the receiving state "saved itself the cost of housing him—and for a nontrivial several week period, which may have allowed it to delay resolving the detainer." *Id.* at 155, 121 *S.Ct.* at 2086, 150 *L.Ed.*2d at 196.

The State responds that the anti-shuttling provision, and *Bozeman,* do not apply to defendant because he was lodged in an FDC rather than a correctional institution and therefore was not a sentenced prisoner within the meaning of the statute or established precedent. Although defendant was serving a sentence of imprisonment on the federal drug charges when he was shuttled, he was not at his ultimate assigned place of incarceration pursuant to federal regulations, only in a temporary detention center.

The State also argues that the legislative purpose of the IAD, i.e., the advancement of rehabilitation, is inapplicable here. Since defendant was housed in an FDC, it contends, strict application of the law is unnecessary as defendant was not engaged in rehabilitation in any event while awaiting disposition of the pending escape charges. Since he was not engaged in rehabilitation, the policy behind the law was not violated by the shuttles. The State relies in great part on pre-*Bozeman* cases as well as *United States v. Pursley,* 474 *F.*3d 757 (10th Cir.), *cert. denied,* 552 *U.S.* 829, 128 *S.Ct.* 47, 169 *L.Ed.*2d 42 (2007), in support of its position. The State also points out that New Jersey does not have the option of dismissal without prejudice when the anti-shuttling provision is violated, as is now the case under the federal statute. *See* 18 *U.S.C.A.* app. 2, § 9(1).

Preliminarily, we do not agree that the vagaries of available space and transportation arrangements at federal facilities, and similar administrative concerns, should be dispositive of the effect

of the IAD's anti-shuttling provisions. Happenstance should not guide our interpretation of the relevant sections of the statute. *See Pero, supra,* 370 *N.J.Super.* at 218–20, 851 *A.*2d 41 (discussing the impact of administrative errors made by prison authorities of a sending state). Regardless of the locale at which defendant was housed, the unalterable fact remains that he was serving a sentence for conspiracy when the shuttling occurred.

In *Pursley, supra,* 474 *F.*3d at 761, the federal government issued a writ and detainer against a defendant serving a sentence in a Colorado state prison. He was transported from the state facility to a federal one to await trial. *Ibid.* During his stay in the federal facility, defendant was shuttled to a Colorado state court to address a third set of unrelated charges, and back to the federal facility that same day. *Id.* at 761, 763. However, in that time, he was never returned to the first state facility to serve his original Colorado sentence. *Id.* at 761.

On its facts alone, *Pursley* is distinguishable from this situation. Here, defendant was simultaneously serving a federal sentence while awaiting disposition of new federal charges. In contrast, the *Pursley* defendant, while serving a Colorado state sentence, was taken to another Colorado state court for additional proceedings on new charges via a stay in a federal facility where he had open federal charges, rather than being returned to the first facility to continue to serve the original state sentence. Therefore, no anti-shuttling violation occurred under the IAD as the federal authorities, whose charges were being challenged, were not responsible for the transfer. *Id.* at 763–64.

Indeed, the factual scenario with which we are confronted most resembles that found in *United States v. Gezelman,* 522 *F.Supp.*2d 344 (D.Mass.2007), a case which the trial court found non-binding and distinguished because the dismissal under the federal statute was without prejudice. While serving a Connecticut sentence, Gezelman was taken to Massachusetts to address open charges there. *Id.* at 345. He continued to serve the Connecticut sentence. *Ibid.* Gezelman was then shuttled from Massachusetts,

before the disposition of those charges, to federal court to face new charges and returned to the Massachusetts prison where he continued serving his Connecticut sentence, simultaneously awaiting the resolution of all pending matters. *Ibid.* He alleged violations of both the anti-shuttling and the 120–day provisions of the IAD. *Id.* at 346. The court found that the IAD applied "categorically to *any* prisoner" who is serving a sentence imposed by a party to the IAD and dismissed the federal charges. *Ibid.* The federal court initiated the return of the sentenced defendant, and in doing so, failed to conclusively dispose of his charges.

We are satisfied that, like in *Gezelman,* we have no alternative but to conclude that the IAD "means what it says, even when the violation may appear to be merely technical." *Id.* at 347. The result is "unavoidable." *Ibid.* This defendant, while serving a federal sentence, was brought into New Jersey for preliminary hearings and shuttled back at least four times in violation of the IAD.

*N.J.S.A.* 2A:159A–5(c) mandates the following:

[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in ... Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Therefore, we reverse the denial of defendant's motion and remand for entry of a judgment in accordance with this opinion.

Reversed.