# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 6, 2013 Session

## STATE OF TENNESSEE v. MICHAEL SHANE SPRINGER

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Gibson County**
No. 17764     Clayburn Peeples, Judge

---

### No. W2010-02153-SC-R11-CD - Filed June 24, 2013

---

In this appeal, we interpret the meaning of the phrase "term of imprisonment" in Articles III and IV of the Interstate Agreement on Detainers ("IAD"), Tenn. Code Ann. §§ 40-31-101 to -108 (2006), and determine whether the defendant is entitled to relief under the IAD. The IAD, a compact between state and federal jurisdictions, provides cooperative procedures for the exchange of prisoners between state and federal jurisdictions so that prisoners can be brought to trial on untried indictments or complaints. Under Article III of the IAD, a prisoner serving a term of imprisonment may request a trial within 180 days after being delivered to another state. Under Article IV of the IAD, an official of one jurisdiction may seek custody of a prisoner serving a term of imprisonment in another jurisdiction, but the prisoner must be tried within 120 days of arrival in that jurisdiction and cannot be "shuttled" back to the original place of imprisonment before the trial. The IAD mandates a dismissal of the indictment for a violation of either Article III or IV. The defendant in this case was arrested on related federal and state charges and taken into federal custody. After the defendant was tried and convicted in federal court, he was indicted by the grand jury in Gibson County on the related state charges. Before being sentenced in federal court, the defendant filed a demand for speedy disposition of the state charges under Article III of the IAD. While the defendant was confined at a federal temporary detention facility after his sentencing in federal court, the Gibson County Sheriff filed a detainer and transported the defendant to Gibson County for an arraignment. After counsel was appointed and the defendant was arraigned, he was transferred back into federal custody. The defendant filed a motion to dismiss the state indictment for violations of Articles III and IV of the IAD. The trial court denied the motion. The defendant entered a conditional guilty plea pursuant to Tenn. R. Crim. P. 11 and reserved a certified question of law seeking appellate review of the denial of the motion to dismiss because of the alleged violation of the IAD. The Court of Criminal Appeals, in a divided opinion, affirmed the trial court's denial of the defendant's motion to dismiss. *See State v. Springer*, No. W2010-02153-CCA-R3-CD, 2012 WL

603820, at *1 (Tenn. Crim. App. Feb. 16, 2012). We hold that for purposes of the IAD, a prisoner who is incarcerated after sentencing is serving a "term of imprisonment." We further hold that the defendant properly reserved his issues for appeal in the certified question; that the defendant was a federal pretrial detainee at the time he filed a procedurally deficient demand for speedy disposition and is not entitled to relief under Article III; and that the defendant was serving a term of imprisonment when he was transferred, pursuant to a detainer, from the federal temporary detention facility to Gibson County for his arraignment and back to federal custody on the same day. Article IV of the IAD was violated when the defendant was transferred back to the federal detention center before being tried for the state charges. The judgment of the Court of Criminal Appeals is reversed, the conviction is vacated, and the indictment against the defendant is dismissed with prejudice.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Reversed; Conviction Vacated; Indictment Dismissed**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); Tom W. Crider, District Public Defender, and Stephanie Hale, Assistant Public Defender, Trenton, Tennessee (at trial and of counsel on appeal), for the appellant, Michael Shane Springer.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Garry Brown, District Attorney General; and Jason C. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In August 2006, Michael Shane Springer ("Defendant") was arrested on related federal and state charges. While awaiting trial, Defendant was confined in the West Tennessee Detention Facility, a federal temporary detention facility, in Mason, Tennessee. On April 11, 2007, Defendant pleaded guilty to three federal charges. On May 7, 2007, a Gibson County Grand Jury returned a multi-count indictment against Defendant. After Defendant learned of the Gibson County indictment from a federal public

defender, Defendant filed a *pro se* demand for speedy disposition[1] pursuant to Article III of the IAD with the Gibson County Circuit Court Clerk. On August 17, 2007, Defendant was sentenced in federal court to a twenty-year prison term and remained in federal custody at the West Tennessee Detention Facility.

On August 27, 2007, the Gibson County Sheriff lodged a detainer against Defendant.[2] On August 30, 2007, Defendant was transported from the West Tennessee Detention Facility to Gibson County for his arraignment and back to federal custody on that same day. Later, Defendant was transferred to a federal penitentiary in Terre Haute, Indiana, and subsequently to a federal penitentiary in Tucson, Arizona. On September 22, 2009, Defendant was returned to Gibson County for pretrial proceedings.[3]

On December 7, 2009, Defendant filed a motion to dismiss the indictment based on violations of provisions in Articles III and IV of the IAD imposing deadlines for trial and prohibiting a return of a prisoner before trial (the "anti-shuttling provisions"). After hearing evidence and oral arguments, the trial court denied Defendant's motion to dismiss. Defendant entered into a conditional guilty plea, reserving for appeal the issue of whether he was entitled to relief under the IAD.

The Court of Criminal Appeals affirmed Defendant's conviction; however, each member of the panel expressed a different view. *See State v. Springer*, No. W2010-02153-CCA-R3-CD, 2012 WL 603802, at *1 (Tenn. Crim. App. Feb. 16, 2012). Judge Bivins held that the certified question of law was adequate for review; that Defendant's request for relief under Article III was procedurally deficient; and that Defendant was not entitled to relief under Article IV because he was not serving a term of imprisonment at the temporary federal facility when he was transferred to Gibson County on August 30, 2007. Judge Woodall agreed that Defendant was not entitled to relief under Article III, but he would have granted relief under Article IV because, in his view, Defendant was serving a term of imprisonment

---

[1] Defendant's Article III request for disposition was titled "Demand for Speedy Disposition."

[2] On August 28, 2007, the Circuit Court for Gibson County issued a writ of habeas corpus *ad prosequendum* directing Defendant's return to Gibson County for arraignment. It was the detainer, not the writ of habeas corpus *ad prosequendum*, that triggered the application of the IAD. *See State v. Henretta*, 325 S.W.3d 112, 135 (Tenn. 2010). The IAD would not have been applicable had the writ of habeas corpus *ad prosequendum* been the sole basis of the transfer and had no detainer been filed. *Id.*

[3] The record is unclear as to whether Defendant had been returned to the federal penitentiary in Arizona or his place of incarceration at the time of the pretrial proceedings. We have not considered any potential violation of the IAD on the basis of Defendant's 2009 transfer as the record is inadequate to permit such review.

when he was transferred to Gibson County from the temporary federal facility because he had been sentenced in federal court. Judge Glenn agreed that the conviction should be affirmed because Defendant's certified question did not properly present the issues for appeal and, as a result, the Court of Criminal Appeals lacked jurisdiction to hear the appeal.

We granted Defendant's Tenn. R. App. P. 11 application for permission to appeal and consider the following questions: (1) whether Defendant properly reserved the certified question of law; and (2) whether Defendant is entitled to relief based on violations of Article III and Article IV of the IAD.

## II. Analysis

### A. Certified Question of Law

When entering his guilty plea, Defendant reserved the following certified question of law:

> Whether the trial court erred in failing to grant the defendant's Motion to Dismiss alleging the State violated the provisions of the Interstate Agreement on Detainers (T.C.A. 40-31-101 et seq, U.S. Code Title 18-App) and the anti-shuttling provisions therein pursuant to *Alabama v. Bozeman*, 5[3]3 U.S. 146 (2001).

Under Tenn. R. Crim. P. 37(b)(2), a defendant may plead guilty and appeal a certified question of law that is dispositive of the case as long as certain conditions are met.[4]  After

---

[4] Tenn. R. Crim. P. 37 provides, in pertinent part:

(b) When an Appeal Lies. The defendant or the state may appeal any order or judgment in a criminal proceeding when the law provides for such appeal. The defendant may appeal from any judgment of conviction:
. . . .
    (2) on a plea of guilty . . . if:

        (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved–with the consent of the state and of the court–the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(continued...)

-4-

entering a guilty plea under Tenn. R. Crim. P. 11(a)(3),[5] a defendant must explicitly reserve, with the consent of the state and the trial court, the right to appeal a dispositive question of law. *State v. Armstrong*, 126 S.W.3d 908, 910 (Tenn. 2003). In addition to reserving the question of law, the defendant must draft the question so that its scope and limits are clearly stated for the reviewing court. *State v. Day*, 263 S.W.3d 891, 898-99 (Tenn. 2008) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)); *see also State v. Pendergrass*, 937 S.W.2d 834, 836-37 (Tenn. 1996). Appellate courts lack jurisdiction to hear any issue beyond the scope of the certified question. *See Day*, 263 S.W.3d at 899-900; *State v. Irwin*, 962 S.W.2d 477, 478-79 (Tenn. 1998); *Pendergrass*, 937 S.W.2d at 836-37; *Preston*, 759 S.W.2d at 650. The defendant bears the burden of ensuring that the final order complies with the requirements of Rule 37 and that the appellate record is sufficient for review. *Preston*, 759 S.W.2d at 650.

The State argues that Defendant's certified question of law did not identify "clearly the scope and limits of the legal issue reserved" as required by Rule 37(b)(2)(A)(ii). Although Defendant's certified question would have benefitted from the

---

[4](...continued)

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

[5] Tenn. R. Crim. P. 11 provides, in pertinent part:

(a) Plea Alternatives.

> (1) In General. A defendant may plead not guilty, guilty, or nolo contendere. . . .

> (3) Conditional Plea. A defendant may enter a conditional plea of guilty or nolo contendere in accordance with Rule 37(b).

incorporation of more fact-specific references, we hold the substance of the question nevertheless satisfies our jurisdictional requirements and that the issue of whether the State violated the anti-shuttling provisions of the IAD in light of *Bozeman* is properly before this Court. *Cf. State v. Colzie*, No. M1998-00253-CCA-R3-CD, 1999 WL 1074111, at *3 (Tenn. Crim. App. Nov. 30, 1999) (holding that a certified question was sufficient when it was "evident that [the] statement of the issue [reflected] the grounds for suppression that Defendant asserted at the trial court," even though it could have been more precisely drafted); *State v. Harris*, 919 S.W.2d 619, 621 (Tenn. Crim. App. 1995) (holding that even though "[t]he issue is not framed according to what might be referred to as standard 'law-school' format," *Preston* only requires that a certified question "clearly identify the scope and limits of the legal issues reserved").

## *B. IAD*

Tennessee, forty-seven other states,[6] the United States, the District of Columbia, Puerto Rico, and the United States Virgin Islands (each of which is referred to as a "member state" or "party state") have entered into the IAD. Tenn. Code Ann. § 40-31-101, art. II(c) (2006); *see also* 18 U.S.C. app. 2, art. II(a) (2006); *United States v. Currier*, 836 F.2d 11, 13 (1st Cir. 1987); *Dillon v. State*, 844 S.W.2d 139, 141 (Tenn. 1992), *cert. denied*, 507 U.S. 988 (1993); *State v. Hill*, 875 S.W.2d 278, 280-81 (Tenn. Crim. App. 1993). The IAD provides cooperative procedures for transfers of prisoners between the federal and state jurisdictions that have adopted the interstate compact. Tenn. Code Ann. § 40-31-101, art. I; *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001); *see also* Leslie W. Abramson, *Smith v. Hooey: Underrated but Unfulfilled,* 44 San Diego L. Rev. 573, 576 (2007). The IAD recognizes that outstanding charges against a prisoner, detainers based on untried indictments, and difficulty getting a speedy trial in another jurisdiction produce uncertainties that can obstruct a prisoner's participation in rehabilitation and treatment programs. *See* Tenn. Code Ann. § 40-31-101, art. I. Detainers can "adversely influence a prisoner's classification as a maximum or close custody risk, as well as his or her eligibility for work assignments, preferred living accommodations, work release programs, and parole." *Grant v. United States,* 856 A.2d 1131, 1133 (D.C. 2004). To minimize the disruption of a

---

[6] Louisiana and Mississippi have not entered into the IAD. *See State v. McCarter*, 469 So. 2d 277, 285 (La. Ct. App. 1985); *Gardner v. State*, 57 So. 3d 688, 689 (Miss. Ct. App. 2011).

prisoner's rehabilitation program, the IAD provides for the "expeditious and orderly disposition of the charges underlying such detainers."[7] *Dillon*, 844 S.W.2d at 141.

Under the IAD, a "state," which is defined by Article II(c) to include a state of the United States, the United States, a territory or possession of the United States, the District of Columbia, and Puerto Rico, may function as either a "sending state" or a "receiving state." *See* Tenn. Code Ann. § 40-31-101, art. II(a), (b). The sending state is the jurisdiction where the prisoner is incarcerated at the time he or she makes a request for disposition under Article III or when an appropriate official in another IAD jurisdiction requests the prisoner's transfer under Article IV. Tenn. Code Ann. § 40-31-101, art. II(b). The receiving state is the jurisdiction in which trial is to be had on a pending indictment, information, or complaint pursuant to Article III or Article IV. Tenn. Code Ann. § 40-31-101, art. II(a). The IAD governs transfer of a prisoner from custody of one state to another, federal custody to state custody, and state custody to federal custody, even where the transfer is within the same geographic state. *See* 18 U.S.C. app. 2, art. I; Tenn. Code Ann. § 40-31-101, art. I; *United States v. Schrum*, 504 F. Supp. 23, 25 (D. Kan. 1980). The IAD is not applicable to the transfer of a prisoner from one federal district to another. *See United States v. Stoner*, 799 F.2d 1253, 1256 (9th Cir. 1986). The IAD only applies to prisoners serving a term of imprisonment—thus it is not applicable to pretrial detainees. *See State v. Lock*, 839 S.W.2d 436, 444 (Tenn. Crim. App. 1992)*; see also United States v. Taylor*, 173 F.3d 538, 541 (6th Cir. 1999) (citing *United States v. Roberts*, 548 F.2d 665, 669-71 (6th Cir. 1977) (per curiam))*, abrogated in part by Bozeman*, 533 U.S. at 153-56; *United States v. Muniz*, 1 F.3d 1018, 1026 (10th Cir. 1993); *Felix v. United States*, 508 A.2d 101, 106 (D.C. 1986).

The IAD, enacted by Congress pursuant to United States Constitution, art. I, § 10, cl. 3, is a federal law that is subject to authoritative construction by the Supreme Court of the United States. *See Cuyler v. Adams*, 449 U.S. 433, 438 (1981). We are bound by the Supreme Court of the United States' construction of the terms of this agreement. *See In re All Assessments*, 67 S.W.3d 805, 818-19 (Tenn. Ct. App. 2001). The IAD is remedial in nature and must be liberally construed in favor of the prisoners whom it was intended to protect. *See Nelms v. State*, 532 S.W.2d 923, 927 (Tenn. 1976) (citing *Commonwealth v. Fisher*, 301 A.2d 605, 607 (Pa. 1973)); *see also* 18 U.S.C. app. II, art. IX; Tenn. Code Ann. § 40-31-101, art. IX; *Dillon*, 844 S.W.2d at 141.

---

[7] For purposes of the IAD, "[a] detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719 (1985).

Our interpretation of the language of the IAD involves statutory construction. This is a question of law which we review de novo with no presumption of correctness. *See State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004). When interpreting statutes, we strive to carry out the legislative intent without broadening or restricting the statute beyond its intended scope. *State v. L.W.*, 350 S.W.3d 911, 916 (Tenn. 2011); *see also United States v. Great N. Ry. Co.*, 287 U.S. 144, 154 (1932) ("[W]e have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute."). When statutory language is clear and unambiguous, we look to its plain meaning and ordinary use to ascertain legislative intent. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). "[W]e presume that every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010) (quoting *Larsen–Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010)) (alteration in original).

## C. Article III

Under Article III,[8] after a prisoner has entered into a term of imprisonment in a

---

[8] Article III of the IAD, in pertinent part, provides:

(a) Whenever a person has entered upon a *term of imprisonment* in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, . . . on the basis of which a detainer has been lodged against the prisoner, the person shall be brought to trial within one hundred eighty (180) days after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the person's imprisonment and request for a final disposition to be made of the indictment, information or complaint. . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good and honor time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof *shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of the prisoner*, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform the prisoner of the source and contents of any detainer lodged against

(continued...)

member state and another member state brings criminal charges and lodges a detainer against the prisoner, the prisoner may prepare a written notice and request for final disposition. *See* Tenn. Code Ann. § 40-31-101, art. III(a). A prisoner must deliver or send the request for final disposition to a specified prison official who, in turn, must forward it to the appropriate officials in the receiving state. *See* Tenn. Code Ann. § 40-31-101, art. III(b), (c); *State v. Moore*, 774 S.W.2d 590, 595 (Tenn. 1989); *see also State v. Wood*, 924 S.W.2d 342, 344 n.6 (Tenn. 1996) (citing *State v. Grizzell*, 584 S.W.2d 678 (Tenn. Crim. App. 1979)). The receiving state must bring the prisoner to trial within 180 days of receiving the prisoner's request for disposition. Tenn. Code Ann. § 40-31-101, art. III(a). If the prisoner is not transferred to the receiving state and brought to trial within the 180-day time period, subject to some tolling principles, or is returned to the sending state prior to trial, the trial court must dismiss the charges with prejudice. Tenn. Code Ann. § 40-31-101, art. III(d).

Defendant's claim for relief under Article III fails for several reasons. First, Article III only applies to persons who are serving a term of imprisonment. When Defendant filed his demand for speedy disposition, he was a pretrial detainee because he had been convicted, but not sentenced, by the federal court. The IAD is not applicable to a pretrial detainee because the prisoner is not serving a term of imprisonment. *See Lock*, 839 S.W.2d at 444; *see also Taylor*, 173 F.3d at 541; *Roberts*, 548 F.2d at 670-71; *Muniz*, 1 F.3d at 1026; *Felix*, 508 A.2d at 106. Second, Article III only applies after a detainer has been lodged against the prisoner by the receiving state. Tenn. Code Ann. § 40-31-101, art. III(a). Defendant filed his demand for speedy disposition before a detainer was placed against him by the State of

---

[8](...continued)
the prisoner and shall also inform the prisoner of the right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. *If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.*

Tenn. Code Ann. § 40-31-101, art. III (emphasis added).

Tennessee. Finally, Defendant filed his demand for speedy disposition with the circuit court clerk instead of delivering it to the appropriate prison official to forward to the clerk. *See* Tenn. Code Ann. § 40-31-101, art. III(b)-(e); *Moore*, 774 S.W.2d at 595; *see also Wood*, 924 S.W.2d at 344 n.6. Accordingly, Defendant is not entitled to relief under Article III.

## D. *Article IV*

Article IV[9] allows an appropriate official to lodge a detainer against a prisoner confined in another member state and seek custody of the prisoner. *See* Tenn. Code Ann. § 40-31-101, art. IV(a). Article IV, like Article III, only applies to a prisoner who is serving "a term of imprisonment" and contains two significant limits. First, the prisoner's trial must be commenced, subject to some tolling principles, in the receiving state within 120 days of his or her arrival in the receiving state. Tenn. Code Ann. § 40-31-101, art. IV(c). Second, the prisoner's trial must be conducted in the receiving state before the prisoner is returned to the "original place of imprisonment." Tenn. Code Ann. § 40-31-101, art. IV(e). If the trial is not commenced within 120 days of the prisoner's arrival or if the prisoner is returned or "shuttled" back to the original place of imprisonment before trial, the trial court is required to dismiss the charges with prejudice. *Id.*

---

[9] Article IV of the IAD provides, in pertinent part, that:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom the appropriate officer has lodged a detainer and who is serving a *term of imprisonment* in any party state made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated
. . . .

(c) In respect of any proceedings made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
. . . .

(e) If trial is not had on any indictment, information or complaint contemplated hereby *prior to the prisoner's being returned to the original place of imprisonment* . . . such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Tenn. Code Ann. § 40-31-101, art. IV (emphasis added).

Whether Defendant is entitled to relief under Article IV hinges on our interpretation of the phrase "term of imprisonment." This is an issue of first impression for this Court. If Defendant was serving a term of imprisonment at the federal temporary detention facility on August 30, 2007, when he was transferred pursuant to a detainer from federal custody to Gibson County and back to federal custody, then the anti-shuttling provision of Article IV was violated and dismissal of the indictment is required.

A split of authority exists as to whether the IAD applies to a convicted and sentenced prisoner who is held in temporary custody pending a transfer to permanent incarceration. *See Runck v. State*, 497 N.W.2d 74, 81 (N.D. 1993) (describing this split of authority and surveying cases from numerous jurisdictions that have reached different conclusions); 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.4(c) (3d ed. 2007). The State urges this Court to follow the holding in *Jenkins v. United States*, 394 F.3d 407, 413 (6th Cir. 2005), where the United States Court of Appeals for the Sixth Circuit determined that the IAD was not applicable to a sentenced prisoner who was transferred on several occasions from a county jail to federal court for pretrial proceedings and then back to the county jail. Relying on its holding in *Taylor,* 173 F.3d at 541, the court ruled that a prisoner begins serving a term of imprisonment when he or she is "transferred to the 'state facility to which [the prisoner] is ultimately assigned, not the local facility in which [the prisoner] sits awaiting transfer to that facility.'" *Id.* at 413.

*Taylor* involved a prisoner, previously sentenced on state charges, who was transported multiple times from a county jail to federal custody and returned to the county jail before the prisoner was tried in federal court. *See Taylor*, 173 F.3d at 540-41. The Sixth Circuit rejected the prisoner's claim that this treatment violated the IAD because it found that the prisoner had been in a "local facility" awaiting a transfer to a "correctional facility." *Id.* at 541. The court reasoned that the local facility did not offer rehabilitative programs that would have been interrupted by the prisoner's temporary transfer. *Id.* The *Taylor* court also held that even if a "term of imprisonment" commenced at sentencing, "quick, temporary transfers do not violate the IAD." *Id.* at 541-42 (citing *Taylor v. United States*, 504 U.S. 991 (1992) (White, J., dissenting from denial of certiorari)).

Much of the legal foundation of the *Taylor* rule was abrogated by the Supreme Court of the United States' holding in *Bozeman*, 533 U.S. 146. In *Bozeman*, the Supreme Court held that "*every* prisoner arrival in the receiving state, whether followed by a very brief stay or a very long stay in the receiving state, triggers [Article] IV(e)'s 'no return'

-11-

requirement." 533 U.S. at 154. The Supreme Court reasoned that the language of the IAD[10] was absolute and militated against an implicit exception, even for *de minimis* violations. *Id.* at 153; *see also United States v. Parker*, No. WDQ-09-0360, 2011 WL 4632177, at *2 (D. Md. Oct. 3, 2011) ("Article IV(e)'s dismissal is strictly interpreted; there are no exceptions for *de minimis*, technical, or harmless errors."); *United States v. Gezelman*, 522 F. Supp. 2d 344, 347 (D. Mass. 2007) (interpreting *Bozeman* as rejecting the view that a prisoner must be involved in rehabilitative programs for the IAD to apply and holding that the IAD must be strictly applied). Because the interpretation of the IAD is a question of federal law, we must follow the Supreme Court of the United States' holding in *Bozeman*. *See Cuyler*, 449 U.S. at 438; *In re All Assessments*, 67 S.W.3d 805, 818-19 (Tenn. Ct. App. 2001) ("[O]nly the decisions of the United States Supreme Court on issues of federal law are bound to be followed.").

Jurisdictions that apply the same analysis as the *Jenkins* and *Taylor* courts regard sentenced prisoners awaiting transfer to a permanent institution as having the same status as pretrial detainees to whom the IAD does not apply. The rationale for this view is that, because it is designed to guard against interruption of prison rehabilitative programs, the IAD should not apply to prisoners in temporary facilities where rehabilitation programs are not available. *See, e.g.*, *Cooker v. United States*, 814 F.2d 75, 77 (1st Cir. 1987) (declining to apply the IAD to a prisoner who had been sentenced but not transferred to the correctional facility to commence service); *United States v. Paige*, 332 F. Supp. 2d 467, 472 (D.R.I. 2004) (holding that because the stated purpose of the IAD is to prevent interference with a prisoner's rehabilitative environment, there is no reason for the IAD to apply to a prisoner until he or she is assigned to the institution where the sentence will be served); *State v. Fay*, 763 So. 2d 473, 475-76 (Fla. Dist. Ct. App. 2000) (holding the IAD inapplicable to a prisoner at a temporary holding facility and noting that while there may be "an occasional case in which a [prisoner] awaiting transfer is involved in rehabilitative programs offered at the local facility, such rehabilitation efforts themselves ultimately would be disrupted by that prisoner's transfer to his permanent correctional residence"); *State v. Breen*, 882 P.2d 472, 475 (Idaho Ct. App. 1994) (holding the IAD was not applicable to a prisoner, who had been sentenced, but was incarcerated in a local jail or holding facility while awaiting transfer to the assigned penal institution); *State v. Wade*, 772 P.2d 1291, 1294 (Nev. 1989) ("The very programs of prisoner treatment and rehabilitation whose obstruction the IAD was intended to prevent are not present in jails. Permitting prisoners sentenced to jails to invoke the IAD's Article III(a) provisions, therefore, would be meaningless."). *But see Bozeman*, 533 U.S. at 153 (holding that the language of the IAD is mandatory and absolute); *Nelms*, 532 S.W.2d

---

[10] The Supreme Court quoted from Article IV(e), which provides that when a prisoner is returned before trial, the indictment, information, or complaint *"shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."* *Id.* at 149.

at 927 (holding that dismissal under Article V(c) was necessary to achieve general compliance with the statutory mandate and not to protect the prisoner from being prejudiced if his trial was delayed for more than 180 days after demand)).

Defendant argues that the IAD applies to prisoners who have been sentenced and are incarcerated, and that it is immaterial whether incarceration is at a temporary detention facility or at the prisoner's permanent place of incarceration. Our Court of Criminal Appeals has followed this view. *See Lock*, 839 S.W.2d at 444. In *Lock*, a prisoner who was serving a sentence in a Kentucky jail filed a request for final disposition of an indictment pending against him in Sumner County, Tennessee. *Id.* at 438. After the passage of 180 days, the prisoner filed a motion to dismiss the Sumner County charges, asserting that he had not been tried within the time period required by the IAD. *Id.* at 439. The Court of Criminal Appeals rejected the State's argument that the IAD was not applicable because it found that the prisoner was in a county jail, not a state prison. The court held that "[i]f a prisoner is under custodial authority by virtue of serving a term of imprisonment, the fact that he [or she] is awaiting transfer from one facility to another is of no consequence to the operation of the [IAD]." *Id.* at 444. Relying on *Felix v. United States*, 508 A.2d 101, 106 (D.C. 1986), the Court of Criminal Appeals held that "once a person has been convicted, sentenced, and has begun serving that sentence in the sending jurisdiction, that person's status is distinguishable for purposes of invoking the [IAD's] protections from that of a pretrial detainee." *Lock*, 839 S.W.2d at 444. The court reasoned that given the remedial nature of the IAD, the classification of the facility in which the prisoner is confined should not control the IAD's application. *See id.*

A number of courts have reached a similar conclusion. *See United States v. Dobson*, 585 F.2d 55, 58-59 (3d Cir. 1978) (holding that the "natural meaning of the phrase 'serving a term of imprisonment' denotes no more or less than that definable period of time during which a prisoner must be confined in order to complete or satisfy the Prison term or sentence which has been ordered"); *United States v. Small*, 209 F. Supp. 2d 1114, 1120-21 (D. Colo. 2012) (holding that it is inconsistent with the purpose of the IAD to deny its protections to a sentenced prisoner who serves time, no matter how lengthy, in a temporary facility); *United States v. Evans*, No. 1:08CR00024-006, 2008 WL 3834089, at *3 (W.D. Va. Aug. 15, 2008) (holding that the government's argument that the IAD did not apply because the prisoner had not been assigned to a permanent facility was not persuasive in light of the Supreme Court's holding in *Bozeman*), *recommendation adopted by United States v. King*, No. 1:08CR00024-6, 2008 WL 4319734, at *1 (W.D. Va. Sept. 12, 2008); *Escalanti v. Superior Court*, 799 P.2d 5, 9 (Ariz. Ct. App. 1990) (holding that inmates in Arizona jails and prisons cannot be treated differently based on a distinction between the rehabilitative programs available in the two types of institutions); *People v. Walton*, 167 P.3d 163, 166 (Colo. App. 2007) (holding that a "term of imprisonment" begins at the time a prisoner is sentenced); *People v. Helmstetter*,

914 P.2d 474, 478 (Colo. App. 1995) (holding that the language of the statute, and the court's duty to apply the statute as written, requires the court to interpret the statute to apply when the prisoner is sentenced, without regard to the institution where the prisoner is incarcerated after the sentencing); *State v. Black*, ___ N.E.2d ___, No. 12-COA-018, 2013 WL 1092775, at *4 (Ohio Ct. App. Mar. 15, 2013) (holding that the IAD applies to prisoners held in county jails as well as state penal or correctional facilities); *see also* 18 U.S.C. § 3585(a) (2006) ("A sentence to a term of imprisonment commences on the date the [prisoner] is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served.").

We hold that a "term of imprisonment" begins when a prisoner has been sentenced and confined, even when the prisoner is serving the sentence in a temporary detention facility or a county jail. The plain meaning of "term of imprisonment" indicates the time period begins when the prisoner is imprisoned after being sentenced. It does not refer to the place of the incarceration. As noted in *Lock*, a sentence in Tennessee can be served in the Department of Correction, a local jail, or a workhouse. *Lock*, 839 S.W.2d at 444. This interpretation, based on the plain meaning of the statutory language, provides a consistent bright line rule for courts to follow, and it effectuates the intent of the legislature in adopting the IAD. This interpretation is also consistent with the holding of the Supreme Court of the United States in *Bozeman* which we are required to follow. The purpose of the IAD is to "encourage the expeditious and orderly disposition" of outstanding charges against a prisoner which can "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Tenn. Code Ann. § 40-31-101, art. I. It is inconsistent with this purpose to make a distinction between a prisoner's confinement at a local, temporary detention center and a state or federal prisoner facility where a prisoner is ultimately assigned. A prisoner's confinement following the imposition of a sentence commences the prisoner's term of imprisonment, triggering the application and protections of the IAD.

The anti-shuttling provision of Article IV of the IAD was violated when Defendant was transferred, pursuant to a detainer, from federal custody to state custody and back to federal custody on August 30, 2007 before he was tried on the charges pending in Gibson County. Pursuant to Article IV(e) of the IAD, the state indictment must be dismissed with prejudice.

### III.  Conclusion

The judgment of the Court of Criminal Appeals is reversed, the conviction is vacated, and the indictment against Michael Shane Springer is dismissed with prejudice.


_____
SHARON G. LEE, JUSTICE