966 A.2d 488

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. FORREST M. BAKER, SR., DEFENDANT–
APPELLANT.

Argued January 5, 2009—Decided March 16, 2009.

190

*Jacqueline E. Turner*, Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney).

*Natalie A. Schmid Drummond*, Deputy Attorney General, argued the cause for respondent (*Anne Milgram*, Attorney General of New Jersey, attorney).

PER CURIAM.

The judgment of the Appellate Division is affirmed substantially for the reasons expressed by Judge Messano's opinion of the Appellate Division, reported at 400 *N.J.Super.* 28, 945 *A.*2d 723 (App.Div.2008). We add only the following.

The Interstate Agreement on Detainers (IAD), codified in New Jersey at *N.J.S.A.* 2A:159A–1 to –15, "creates uniform procedures for lodging and executing a detainer, *i.e.*, a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a

different crime." *Alabama v. Bozeman*, 533 *U.S.* 146, 148, 121 *S.Ct.* 2079, 2082, 150 *L.Ed.*2d 188, 192 (2001).[1] The IAD's reach, however, does not extend beyond its specific terms. Thus, when a state—the receiving state—seeks to prosecute a person in the custody of another state—the sending state—the receiving state triggers the IAD by the coalescence of two separate but distinct acts: the lodging of a detainer with the sending state *and* the "presentation of a written request for temporary custody or availability" to the sending state. *N.J.S.A.* 2A:159A–4 (a).[2]

■ On several occasions, the State procured the presence of defendant Forest M. Baker, Sr. from federal custody (where defendant was serving a term of imprisonment) to appear in then-pending State criminal proceedings. The State never lodged a detainer against defendant. Instead, in each instance defendant was transferred between federal and New Jersey custody via a writ of *habeas corpus ad prosequendum* or an order to produce. That writ is "used in criminal cases to bring before a court a prisoner to be tried on charges other than those for which the prisoner is currently being confined." *Black's Law Dictionary* 715 (7th ed.1999). Furthermore, although orders equivalent to an order to produce, such as writs of *habeas corpus ad prosequen-dum*, qualify as the required "written request for temporary custody," they do not constitute a detainer. *United States v. Mauro*, 436 *U.S.* 340, 360–61, 98 *S.Ct.* 1834, 1847–48, 56 *L.Ed.*2d

---

[1] The IAD "is a compact among 48 States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. [It] was drafted in 1956 by the Council of State Governments and was adopted in 1958 by the State of New Jersey, where it is now codified.... [It] is a congressionally sanctioned interstate compact within the Compact Clause, *U.S. Const.*, Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash*, 473 *U.S.* 716, 719, 105 *S.Ct.* 3401, 3403, 87 *L.Ed.*2d 516, 520 (1985).

[2] A prisoner also may trigger the IAD. *See* Art. III(a) of the IAD, *N.J.S.A.* 2A:159A–3(a) (granting prisoner right to activate IAD by providing "written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint"). That provision is not at issue in this case.

329, 347 (1978) ("[W]hen [Congress] used the word 'detainer,' it meant something quite different from a writ of habeas corpus *ad prosequendum* . . . . We therefore conclude that a writ of habeas corpus ad prosequendum is not a detainer for purposes of the [IAD]."). Viewed thusly, it is clear that, in the circumstances presented, the two necessary conditions precedent to the invocation of the IAD never coalesced.

 Defendant nevertheless asserts that the repeated use of orders to produce or writs of *habeas corpus ad prosequendum* subverts the purposes of the IAD and must, in the aggregate, trigger the provisions of the IAD. That concept, styled the "writ plus" test, has been accepted in a few jurisdictions. *See Baker, supra,* 400 *N.J.Super.* at 43, 945 *A.2d* 723 (citing cases). However, because that construction is inconsistent with the plain language of the IAD, we decline to adopt it. We remain ever mindful that,

> [w]hen interpreting a statute, our overarching duty is to construe and apply the statute as enacted. We do so by applying the following principles. First, a court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation. That said, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. We have explained that we may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. We are guided by first principles: our analysis begins with the plain language of the statute.
>
> [*Daidone v. Buterick Bulkheading,* 191 *N.J.* 557, 565–66, 924 *A.2d* 1193 (2007) (citations, internal quotation marks and editing marks omitted).]

 The IAD provides a non-exclusive, yet cohesive framework by which prisoners held in custody by a sending state can be transferred to the custody of a receiving state for purposes of prosecution in the receiving state. The *quid pro quo* for compliance with the IAD is clear. Once a detainer is lodged, a sending state will not release without condition a prisoner wanted by the receiving state, and the prisoner will not be subjected to shuttling back-and-forth between the sending and receiving states. And, once transferred to the receiving state pursuant to a request for

temporary custody separate from the detainer, the prisoner is to remain there until all proceedings are concluded in that jurisdiction. Thus, if—and only if—the IAD properly has been invoked according to its terms, both the State and defendant are entitled to its benefits and limited by its burdens.

As already observed, in order for the receiving state's actions to trigger the IAD, Article IV(a) of the IAD, *N.J.S.A.* 2A:159A-4(a), specifically requires both that a detainer be lodged *and* a written request for temporary custody be made by the receiving state. The absence of either element renders the IAD inapplicable. That was the case here. No doubt, the State made several written requests for defendant's temporary custody; thus, the second prong of Article IV(a) of the IAD obviously was satisfied. However, the absence of a detainer lodged by the State—the required first prong of Article IV(a) of the IAD, and one that cannot be satisfied by a writ commanding a prisoner's appearance—is fatal to defendant's efforts to invoke the IAD's protections.

The judgment of the Appellate Division is affirmed and the matter is remanded to the Law Division for further proceedings.

*For affirmance and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.