DEITCH, J.S.C.
*33 *592 PROCEDURAL POSTURE/UNDERLYING EVENTS [1]
On October 24, 2012, S.A. ("defendant") was arrested, housed in the Union County Jail, and his bail was set at $ 2,000,000. The next day defendant's bail was reduced to $ 1,000,000. On November 16, 2012, defendant pled guilty to one count of racketeering, in violation of N.J.S.A. 2C:41-2(c). On the same day, defendant's bail was reduced to $ 375,000. On November 17, 2012, defendant was released from the Union County Jail on bail pending sentence.
*593 On February 21, 2013, the State moved for revocation of defendant's bail. The motion was granted. Defendant was arrested and remanded to the Union County Jail on February 25, 2013.
On November 10, 2015, the United States Marshals Service for New Jersey issued a detainer for defendant. The same day, a writ of habeas corpus ad prosequendum and a federal warrant for defendant's arrest were provided to the Union County Jail. The writ was signed by the Honorable Vernon A. Broderick of the Southern District of New York and commanded that defendant be:
Released into the custody of the United States Marshals Service for the Southern District of New York or any other authorized law enforcement officer so that [defendant] may be transported under safe secure conduct to the custody of the Warden of the Metropolitan Correctional Center or the person there in charge, to be available for prosecution, as soon as defendant is available, in connection with his alleged commission of the crimes of kidnapping, discharge of a firearm, and conspiracy to distribute controlled substances [ ], and to appear as necessary thereafter until immediately after [defendant] shall have been discharged or convicted and sentenced, at which time [the Union County Jail] shall return [defendant] to the Hudson County Correctional Facility[.]
Defendant was transferred that day. He was housed in the Metropolitan Correctional Center ("MCC"), a federal detention center located in Manhattan.
Defendant remained at the MCC and was ultimately sentenced to time served on his federal charges on March 9, 2018. On March 27, 2018, defendant was transported back to the Union County Jail where he is currently being housed.
The parties have now filed application to this court for a determination of jail credits. The issue was fully briefed and oral argument was held on July 27, 2018.
ANALYSIS
A. Jail Credits
Rule 3:21-8 states that defendants "shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." "Courts refer to this credit as 'jail credits.' "
*594 State v. Joe, 228 N.J. 125, 130, 155 A.3d 563 (2017) (quoting State v. Rawls, 219 N.J. 185, 192, 97 A.3d 1142 (2014) ). Jail credits are "undergirded by important policy considerations." Ibid. Jail credits promote equal protection and fundamental fairness by preventing the "double punishment" of indigent defendants *34 who cannot afford bail. Ibid. In addition, jail credits must be applied "in a manner that prevents the real time served from turning on 'happenstance,' such as whether the same charges are included in one indictment or spread over multiple indictments," and "to promote uniformity in sentencing." Id. at 131, 155 A.3d 563.
B. The Interstate Agreement on Detainers
The New Jersey Supreme Court has recognized that "[c]riminal defendants who are held out of state fall within the purview of the [Interstate Agreement on Detainers ("IAD") ]." Id. at 132, 155 A.3d 563. "The IAD 'is a compact among 48 States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States.' " State v. Baker, 198 N.J. 189, 192 n.1, 966 A.2d 488 (2009) (quoting Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985) ). Codified in New Jersey at N.J.S.A. 2A:159A-1 to -15, the IAD "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." Baker, 198 N.J. at 191, 966 A.2d 488.
"The IAD's reach, however, does not extend beyond its specific terms." Id. at 192, 966 A.2d 488. As said by our Supreme Court:
Thus, when a state--the receiving state--seeks to prosecute a person in the custody of another state--the sending state--the receiving state triggers the IAD by the coalescence of two separate but distinct acts: the lodging of a detainer with the sending state and the 'presentation of a written request for temporary custody or availability' to the sending state.
[ Ibid. (quoting N.J.S.A. 2A:159A-4(a) ).]
*595 In this case, neither party disputes the application of the IAD to defendant. Even if they did, the federal government properly invoked the IAD to secure defendant's transfer to the MCC. The United States Marshals Service for New Jersey issued a detainer for defendant on November 10, 2015. On the same day, the Union County Jail received a writ of habeas corpus ad prosequendum for defendant.[2] A writ of habeas corpus ad prosequendum"qualif[ies] as the required 'written request for temporary custody' " for the IAD. See Baker, 198 N.J. at 192, 966 A.2d 488. Accordingly, the federal government met the two requirements for transfer under the IAD by properly lodging a detainer and properly requesting the production of defendant.
Significantly, the IAD provides that: "[f]or all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending State." N.J.S.A. 2A:159A-5(g). The "sending State" is defined as "a State in which a prisoner is incarcerated ... at the time that a request for custody or availability is initiated." N.J.S.A. 2A:159A-2(b).
In addition, the IAD provides that trial in the receiving jurisdiction must begin within 120 days of the transfer. N.J.S.A. 2A:159A-4(c).[3]
*35 The applicable portion of the IAD provides as follows:
In respect of any proceeding made possible by [ N.J.S.A. 2A:159A-4 ],[4] trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but *596 for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
[ N.J.S.A. 2A:159A-4(c).]
The IAD also provides that the sending State may object to the request for transfer within thirty days of receiving same. N.J.S.A. 2A:159-4(a).
The State here is presumed to know of the contents of the IAD. It took no action to object to the transfer or compel a speedy trial in the receiving jurisdiction.[5]
C. Defendant is Entitled to Jail Credit for His Time in the MCC
Both parties cite to State v. Joe, 228 N.J. 125, 155 A.3d 563 (2017) in support of their respective arguments based upon the language in Joe which repeatedly emphasized that the defendant there was being confined in New York on charges "unrelated" to the New Jersey charges. See, e.g., id. at 135-36, 155 A.3d 563. Accordingly, the parties focus their arguments upon the nature defendant's criminal conduct. Defendant argues that his New Jersey conduct was related to the federal conspiracy, drug and weapon charges and he is therefore entitled to jail credits. The State argues that the New Jersey racketeering to which defendant pled is unrelated to his federal charges and, therefore, an award of jail credits is inappropriate.
*597 In State v. Joe, the New Jersey Supreme Court addressed the issue of jail credits for a defendant who was being held out of State. Id. at 126, 155 A.3d 563. The defendant there was arrested in New Jersey and released upon various charges. Id. at 127, 155 A.3d 563. The defendant failed to appear for arraignment, and a bench warrant was issued for his arrest. Ibid.
Approximately one year later, the defendant was arrested on separate weapons charges in New York and held in New York custody on those charges. Id. at 127-28, 155 A.3d 563. Approximately two months after his New York arrest, New Jersey authorities lodged a detainer with the New York authorities but did not demand his production. Id. at 128, 155 A.3d 563. There is no reference in Joe to a writ of habeas corpus ad prosequendum being issued.[6] The defendant was sentenced in New York on or about February 13, 2012.
*36 New Jersey did not obtain custody of the defendant until some point in 2013, pursuant to the detainer.
The Joe Court held that the defendant was not entitled to jail credits for the time he spent in New York custody. Id. at 135-37, 155 A.3d 563. The court broadly held that: "if a defendant is incarcerated out of state and the confinement is not due solely to New Jersey charges, jail credit does not apply." Id. at 135, 155 A.3d 563.[7] The Joe Court reasoned that if courts were "to award defendants jail credit for time spent in out-of-state prisons on unrelated charges, it would not further equal protection concerns, discourage gamesmanship by New Jersey prosecutors, or promote uniformity in sentencing." Id. 136-37, 155 A.3d 563.
This case is factually distinguishable from Joe. The defendant in Joe was released from New Jersey custody and was subsequently arrested by New York authorities where he was held only on the *598 New York charges. New Jersey issued only a detainer upon the defendant and did not seek his production through the IAD, apparently being satisfied to await the disposition of his New York charges before he was returned to New Jersey. Here, defendant was in New Jersey custody initially and his temporary transfer to the MCC was performed through the IAD. Pursuant to the express terms of the IAD, defendant remained in New Jersey custody although physically present in the MCC.[8] N.J.S.A. 2A:159-2(b).
The State also cites to State v. Hemphill, 391 N.J. Super. 67, 917 A.2d 247 (App. Div. 2007). There, the defendant pled guilty to charges in New Jersey. Id. at 69, 917 A.2d 247. He then fled to Scotland before being sentenced. Ibid. He was detained in Scotland solely upon the New Jersey charges and ultimately returned to New Jersey. Ibid. The defendant there was awarded jail credits for his detention in Scotland. Id. at 71, 917 A.2d 247. Hemphill is factually distinct from the instant matter as defendant here never fled New Jersey and never left New Jersey custody.
It seems that this case falls in-between Joe and Hemphill factually as defendant was in the MCC on both New Jersey and federal charges, with the New Jersey charges being first in time. Furthermore, he was physically in New Jersey custody at the time of his transfer to the MCC and remained in New Jersey custody throughout the time of his transfer pursuant to statute. See N.J.S.A. 2A:159A-5(g).
Given the factual posture of this case, it seems that counsel's arguments focusing upon whether defendant's multi-jurisdictional criminal conduct was "related" miss the mark. Furthermore, it seems that the State over-reads Joe and ignores the plain language of the IAD in arguing that the pendency of the federal charges require a loss of jail credit because defendant was not in the MCC "solely" on New Jersey charges.
*599 Counsels' arguments discount the reality of the IAD and its invocation by the federal authorities here. Defendant never left New Jersey custody after his bail was revoked. While his physical location was transferred outside of New Jersey, custody remained. His New Jersey charges were always pending and the New Jersey authorities, had they wanted to, could have objected to his transfer initially or made application to have him tried and returned.
*37 Defendant is entitled to his claimed jail credits as he was always in New Jersey custody during the period in question. In addition, a finding that defendant is entitled to jail credits on these facts will further the salutary purposes of furthering equal protection concerns, discouraging gamesmanship by New Jersey prosecutors and encouraging necessary jurisdictional exchanges of criminal defendants.
CONCLUSION
Defendant was arrested in New Jersey on October 24, 2012, and released on bail on November 17, 2012. Defendant's bail was revoked and he was placed in New Jersey custody on February 25, 2013, where he has remained. He was transferred to the MCC at the request of federal authorities with New Jersey as the sending State as defined in the IAD. Defendant was in New Jersey custody for jail credit purposes throughout the time his federal charges were being resolved.
Defendant is entitled to jail credit from October 24, 2012, to November 17, 2012, and February 25, 2013, until the date he is sentenced in New Jersey.
Defendant is to appear at 9:00 a.m. on September 7, 2018, for sentencing in accordance with this opinion.

At oral argument on July 27, 2018, the court asked the State about its position as to the dates of certain events pertinent to the instant motion. The State indicated it did not contest the dates presented by the court. However, on review of the record, it seems that the dates presented at oral argument were not accurate. Accordingly, the events and their corresponding events contained in this decision and order are controlling.

A writ of habeas corpus ad prosequendum is "used in criminal cases to bring before a court a prisoner to be tried on charges other than those for which the prisoner is currently being confined." Baker, 198 N.J. at 192, 966 A.2d 488 (quoting Black's Law Dictionary 715 (7th ed. 1999) ).

A defendant has the separate ability to compel trial within 180 days of serving a notice for same upon the receiving jurisdiction. N.J.S.A. 2A:159A-3(a).

The transfer of defendant in this case falls under N.J.S.A. 2A:159A-4. Same controls when a receiving state makes a request for temporary custody of a defendant.

At oral argument, the State represented that it made numerous attempts to return defendant to New Jersey during the time that he was temporarily with the federal authorities. These attempts were in the form of electronic mail communication between the State, the court's Trial Team Leader and defense counsel requesting a date for sentencing. Generally, when the State would request a date for sentencing, defense counsel would request that defendant's production be delayed until defendant's federal charges were resolved. It was agreed to conference the case to, among other things, negotiate the issue of jail credits which resulted in the instant motion. The State did not make a formal application for defendant's return to New Jersey at any time.

As noted above, in order to invoke the IAD, there must be a detainer and an order to produce such as a writ of habeas corpus ad prosequendum. Baker, 198 N.J. at 192, 966 A.2d 488.

It seems that the Joe court used the term incarceration to mean any time spent in custody prior to sentencing.

A review of Promis Gavel reveals that defendant was listed as a New Jersey inmate at all pertinent times.