FILED

05/07/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Brief January 20, 2021

**STATE OF TENNESSEE v. CURTIS BURNSIDE**

**Appeal from the Criminal Court for Knox County**
**No. 110760          Bob R. McGee, Judge**

_____

**No. E2019-02273-CCA-R3-CD**
_____

A Knox County jury convicted the Defendant, Curtis Burnside, of thirty-three counts of theft, twelve counts of burglary, one count of criminal impersonation, and one count of simple possession of a controlled substance.  The trial court imposed partial consecutive sentencing for an effective sentence of twenty-four years.  On appeal, the Defendant contends that: (1) the evidence is insufficient to support his burglary convictions; (2) the State's theory on the "aggregated counts" of the indictment was improper; and (3) the trial court sentenced him under an outdated "theft grading scheme."  After review, we affirm the Defendant's convictions but reverse a number of his sentences.  We conclude that the Defendant was sentenced on certain counts pursuant to an outdated version of the theft grading statute, Tennessee Code Annotated section 39-14-105(a), and should be resentenced on these counts pursuant to the updated version effective January 1, 2017.  We affirm the convictions in all counts but remand to the trial court for resentencing consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Mike Whalen, Knoxville, Tennessee, for the appellant, Curtis Burnside.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; Ta Kisha M. Fitzgerald and Philip H. Morton, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from allegations that the Defendant committed numerous thefts from multiple Knoxville-area clothing, grocery, and convenience stores in 2016. The Defendant was arrested in November of 2016 with half a gram of cocaine on his person. For these offenses, a Knox County grand jury indicted the Defendant in a fifty-one-count indictment: sixteen counts of theft of property valued less than $500, ten counts of theft of property valued between $500 and $1,000, seven counts of theft of property valued between $1,000 and $10,000, twelve counts of burglary, one count of criminal impersonation, and one count of simple possession of cocaine. The grand jury also indicted the Defendant for four counts which were later dismissed: two counts of theft of property valued between $1,000 and $10,000; one count of theft of property valued between $500 and $1,000; and one count of theft of property valued between $10,000 and $60,000.

Prior to trial, the State offered a basis for aggregation of some of the Defendant's thefts into one count, pursuant to Tennessee Code Annotated section 39-14-105 (providing that "The monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value . . . "), which the State argued was appropriate because the Defendant's crimes were part of a common scheme or plan to fund the Defendant's drug habit. The trial court responded that the crimes could not be consolidated simply because the Defendant had committed the same or similar crimes repeatedly. The State alleged that the counts it sought to aggregate had the same victim; the trial court maintained that the same victim did not establish an enterprise for the purposes of aggregation. After hearing further argument, the trial court concluded that, if a common element existed, such as the Defendant's drug habit, in each of the counts sufficient to establish his enterprise of paying for drugs by way of selling stolen merchandise, aggregating the counts was proper. The Defendant objected to the trial court's determination that a common scheme or plan was present and its resulting decision to permit aggregation of the charges.

## A. Trial

At the Defendant's trial on these charges, the following evidence was presented: Lee Gentry testified that he was employed by Kohl's Department Store in Knoxville as a loss prevention supervisor; he had been previously employed in the same capacity at a Walmart, also in Knoxville. On August 20, 2016, Mr. Gentry observed the Defendant come to Kohl's. The Defendant arrived in the store's parking lot in a blue Elantra, and Mr. Gentry recognized him but had never seen the Defendant in person before. Mr. Gentry began tracking the Defendant on the store's camera system and began recording the surveillance video at that point. The Defendant and another individual entered the store. Mr. Gentry observed the Defendant put several items in a shopping cart and then obtain a merchandise bag from behind an unmanned cash register. The Defendant placed his items

2

in the merchandise bag and proceeded to exit the store. When Mr. Gentry approached the Defendant, the Defendant dropped the bag on the sidewalk and ran to his vehicle. The total amount of the merchandise was approximately $350.

Ofelia Wilson testified that she was employed as the deli manager at Ingles Market and was working a shift on August 6, 2016. The Defendant entered the market at around 10:30 p.m., and Ms. Wilson observed him fill a grocery cart with beer, packed neatly and tightly, and exit the store without paying for the beer. Ms. Wilson identified the Defendant on a surveillance video recording. She recalled that the Defendant was accompanied by another man who tried to distract Ms. Wilson while the Defendant was taking the beer. Ms. Wilson called for her manager and ran after the Defendant into the parking lot, where he was loading the beer into a waiting vehicle. Ms. Wilson recorded the tag number from the vehicle's license plate.

Sandra Gazikas testified that she was working at Walgreens on July 4, 2016, as a shift leader and observed the Defendant inside the store. She helped the Defendant find an item and had a "feeling" about him. Ms. Gazikas walked away from the Defendant to help another customer and when she returned, she observed the Defendant walking out of the store with a set of speakers, valued at $29.99, up his shirt. Ms. Gazikas followed the Defendant to the parking lot, where she observed him getting into a waiting vehicle. Ms. Gazikas recorded the tag number from the vehicle's license plate.

Kimberly Elsass, an EZ-Stop Food Mart employee, testified that the Defendant was recorded on surveillance video taking twenty-four cartons of cigarettes, valued at $1,224; Luke Osborne, employed by Kroger, observed the Defendant take two popcorn machines, worth a total of $92.97; Brandi Millsaps, also employed by Kroger as a loss prevention officer, after being contacted by store management about theft incidents, reviewed surveillance of the Defendant taking nine cartons of cigarettes from her store on October 25, 2016, valued at $450. Ms. Millsaps also reviewed video surveillance of the Defendant in the same Kroger store on November 6, 2016, during which time he took nineteen items, including multiple appliances valued at $617.00. Ms. Millsaps reviewed surveillance footage from a third day, November 7, 2016, wherein she observed the Defendant take approximately $250 worth of items from the store.

Michael Kilgore, a Kroger employee working in the loss prevention department, reviewed surveillance footage from a Knoxville-area Kroger from September and October of 2016 at store management's request. He identified the Defendant taking nineteen cartons of cigarettes, valued at $1,063.60, in September and testified that another similar theft occurred in October when the Defendant took eighteen cartons valued at $1,036.80.

Mel Pierce testified that he was employed by the Knoxville Police Department in

the property crimes division and investigated multiple complaints by victims of the Defendant's thefts. The first victim, Biral Patel, provided video surveillance footage from his store which showed the Defendant taking items from Mr. Patel's store. Officer Pierce also investigated the complaint from Kohl's and Mr. Gentry. Both Mr. Patel and Mr. Gentry identified the Defendant in photographic lineups as the man they saw stealing from their businesses. Officer Pierce investigated a theft from an Exxon gas station which occurred on October 31, 2016, when the Defendant reportedly entered the gas station with three other individuals and took twenty-four cartons of cigarettes. Officer Pierce also investigated a theft from a Walmart that occurred on November 2, 2016, where a loss prevention officer reported that the Defendant and another individual had taken a 55-inch television from the electronics section, exiting the store through a fire door. Officer Pierce recalled that, for this incident at Walmart, the Defendant was charged with theft by shoplifting and also with burglary, a charge at issue on appeal, because the Defendant "was not allowed to be on the property, and he entered the property with the intent to commit a crime."

Outside the presence of the jury, the issue of the grading of theft for punishment purposes based on the value of items stolen, was addressed by both parties with the trial court. The State submitted that a new theft grading statute had been passed by the legislature in 2016 but did not go into effect until January 1, 2017. The State cited *State v. Keese*, on appeal to our supreme court at the time, wherein the defendant benefitted at trial from a new version of the statute not in effect at the time of sentencing. The parties agreed that the ultimate question came down to whether the grading of a theft conviction was an element of the crime or a consideration for sentencing. The trial court stated that the issue would be revisited.

The State presented multiple witnesses who were either employees of or loss prevention officers at businesses in the Knoxville area. They each testified to some account of the Defendant committing thefts from their businesses in 2016. The Defendant stole beer, electronics, appliances, Nike shoes, and clothing.

Related to the Defendant's first issue on appeal that the evidence is insufficient to support his burglary conviction because of a lack of notice, the State presented several witnesses employed by Walmart. Thomas Fugate testified that he was one of three asset protection specialists in Knox County employed by Walmart in the asset protection department to prevent shoplifting. He testified that Walmart has a form called a "trespass notice." A trespass notice is issued to an individual, based on the circumstances of the individual "disrupting [Walmart] business or [having] a continuous history of theft from the business," and informing the individual that they will be "Trespassed," or no longer allowed to enter Walmart property. Mr. Fugate testified that the Defendant had previously been "trespassed" from a Walmart on April 16, 2016. He identified the "notice" of trespass

4

with Mr. Fugate's signature on it with a "notification of restriction from property," of which he personally informed the Defendant. Mr. Fugate recalled that when he informed the Defendant of his restriction from the property, he did so by saying that the Defendant was "no longer allowed back on any Walmart property worldwide for the rest of [his] life . . . ." Reading aloud from the notice of restriction, Mr. Fugate noted the following language: "The document constitutes formal notice and warning that you are not allowed on Walmart property . . ." This restriction on entry includes but is not limited to all Walmart retail locations."

Mr. Fugate went on to read from the form, "Should you elect to ignore this notice and enter Walmart property, Walmart may contact law enforcement and request that you be charged with criminal trespass." Mr. Fugate testified that he personally informed the Defendant of the restriction at a time when the Defendant was handcuffed and so could not sign his name. Mr. Fugate identified his own signature on the form as well as the signature of Knoxville Police Officer Turner.

Mr. Fugate identified an audio recording, obtained from the Knoxville Police Department from a police cruiser camera, of him and a co-worker, Matthew Shamrock, orally informing the Defendant of the restriction of his entry. Mr. Fugate identified Mr. Shamrock's voice, telling the Defendant that if he returned to Walmart and committed another theft, it would be upgraded to a burglary charge as opposed to a misdemeanor theft or criminal trespass. Mr. Fugate testified that the restriction applied to all businesses and property owned by Walmart, including Sam's Club and Murphy Oil, as well as any parking lots. The restriction remained in effect when the Defendant entered Walmart stores in October and November of 2016.

On cross-examination, Mr. Fugate was shown a different version of the "notice" form, which he opined was possibly an older version but similar to the current version of the notice of restriction used by his office. He identified additional language on the older form, which warned of the potential upgrade of a theft charge to a burglary charge. Mr. Fugate agreed that this particular warning was not on the form he provided to the Defendant in 2016. He maintained that oral notice of the possible upgrade to burglary had been given to the Defendant and was audible on the police cruiser's recording.

On redirect-examination, Mr. Fugate clarified that, on April 16, 2016, the Defendant was charged with misdemeanor theft and, as a result, was placed on the "trespass list." Thereafter, if the Defendant was seen on Walmart property, he would be committing criminal trespass. Mr. Fugate reiterated that the Defendant was told, on April 16, that if he returned to Walmart and committed another theft, he would be charged with burglary.

On recross-examination, Mr. Fugate agreed that the word "burglary" had not been

used by Mr. Shamrock when informing the Defendant of an upgrade to his charges; Mr. Fugate agreed that Mr. Shamrock used the word "felony." He agreed that the form itself did not address the additional issue of what would happen if the Defendant stole from Walmart after being notified that he was not allowed on the property; the form only addressed the restriction related to him physically returning to the property.

Steve Smartt, employed as an asset protection associate at Walmart, testified that he was working the night of November 20, 2016, and, after hearing the fire alarm activate, he reviewed surveillance footage and observed the Defendant enter the back of the store and take a television off the wall, valued at $748, before exiting the store with it. The Defendant was then recorded getting into a waiting vehicle. Mr. Smartt testified that, on November 20, the Defendant did not have permission to enter the store, having been restricted from all Walmart properties at that time by Mr. Shamrock. Mr. Smartt also testified about an incident of theft on October 24, 2016, from another Walmart location where the Defendant stole another television, valued at $678.

On cross-examination, Mr. Smartt identified an older version of Walmart's "trespass forms." He agreed that the new version of the notice of restriction form did not explicitly state that, if the Defendant "trespassed" and committed another theft, he could be charged with burglary. Mr. Smartt recalled that the store returned to using the older version with the burglary warning sometime in 2017.

The State presented several more Walmart employees who testified to more thefts committed by the Defendant in 2016. The incidents were almost identical in nature as those detailed above in that the Defendant often used the fire exit to leave the store with the stolen merchandise.

Based on this evidence, the jury convicted the Defendant of sixteen counts of theft of property valued less than $500, ten counts of theft of property valued between $500 and $1,000, seven counts of theft of property valued between $1,000 and $10,000, twelve counts of burglary, one count of criminal impersonation, and one count of simple possession of cocaine.

**B. Sentencing**

In 2018, the trial court held a sentencing hearing over a two-day period. Tonya Payne testified that she was employed by Walmart and was present to discuss the financial impact of the Defendant's crimes on the business. She described the steps that Knoxville-area Walmarts were having to take in response to their "huge amounts" of theft incidents. Lee Gentry, a Kohl's employee, testified to similar effects that theft was having on Kohl's "bottom line" and that the theft affected employees' year-end bonuses. Debbie Cox, an employee at the Knox County Sheriff's Office, testified that, while in the department's

custody, the Defendant had received ten disciplinary violations for incidents of lies and deception, damage to the facility, and abuse of privilege, among others. At the conclusion of the State's proof, the State submitted as evidence the Defendant's pre-sentence report, copies of his prior convictions, a victim impact statement, and the disciplinary write-ups from the Defendant's incarceration.

Following what it called "extensive" consideration of the parties' arguments related to the Defendant's sentence, specifically the imposition of consecutive sentencing, the trial court sentenced the Defendant for his sixteen misdemeanor theft convictions to eleven months and twenty-nine days for each conviction. For his simple possession conviction, the trial court imposed a sentence of eleven months and twenty-nine days. For the criminal impersonation conviction, the trial court imposed a sentence of sixty days in jail. For the Defendant's ten convictions for felony theft of property valued between $500 and $1,000, the trial court imposed six-year sentences for each. For the Defendant's additional seven convictions for felony theft of property valued between $1,000 and $10,000 the trial court imposed twelve-year sentences for each. For the Defendant's twelve burglary convictions, the trial court imposed twelve-year sentences for each. The trial court noted that the Defendant would be sentenced as a career offender.

Turning to consecutive sentencing, the trial court again noted its extensive consideration of the arguments and the evidence. The trial court found that the Defendant had a "gross[ly] extensive criminal history and that he had "devoted his life to crime and to [the] victimization of other people." The trial court acknowledged that while the Defendant's crimes were non-violent property crimes, consecutive sentencing was still justified. The trial court also acknowledged that the Defendant had not committed "old-fashioned" burglary by breaking and entering into an inhabited dwelling, but instead had committed a different type of offense with a lesser threat of harm. For that reason, the trial court imposed consecutive sentences for two of the twelve burglary counts and ordered the remaining sentences for all additional counts to run concurrently for a total effective sentence of twenty-four years to be served at 60%. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that he was not provided proper notice by Walmart that he could be charged with burglary if he entered store property. He contends that the April 16 oral warning issued by Mr. Fugate and Mr. Shamrock was not "meaningful notice one would hope might convert a misdemeanor to a felony." He next contends that allowing the State to "aggregate" the counts in his indictment was error because the State put forth a new theory on aggregation during its closing argument. Finally, the Defendant contends that the trial court erroneously sentenced him pursuant to an outdated theft

7

grading scheme, rather than the one in effect at the time of sentencing.

## A. Notice

The Defendant contends that the notice provided to him by Walmart of the possible upgrade of his charge from theft or criminal trespass to felony burglary was insufficient. He contends that the possibility was not listed on the notice of restriction provided to him, and that the oral notice given by Mr. Shamrock was unclear. The Defendant argues that, without sufficient notice, he could not have known that his actions would constitute burglary. The State responds that the notice plainly informed the Defendant that he was barred from Walmart property. His subsequent entry onto Walmart's property and theft from the store was therefore burglary pursuant to the plain language of the burglary statute. We agree with the State.

Relevant here, "A person commits burglary who, without the effective consent of the property owner: (3) Enters a building and commits or attempts to commit a felony, theft or assault[.]" T.C.A. § 39-14-402(a)(3) (2019). Tennessee Code Annotated section 39-11-106(a)(ii) defines "effective consent" as "assent in fact, whether express or apparent." "'Assent' has been defined as an 'agreement, approval, or permission; esp., verbal or nonverbal conduct reasonably interpreted as willingness.'" *State v. Welch*, 595 S.W.3d 615, 622 (Tenn. 2020) (quoting *Black's Law Dictionary* 115-16 (10th ed. 2014)). In *Welch*, our supreme court held that a no-trespass form served upon the defendant by Walmart, similar to the one in this case, made it clear to the defendant that she did not have effective consent to enter or remain on Walmart property. *Id.* at 623.

We conclude that the same is true here: the Defendant was sufficiently notified, by the form provided and from an oral warning from store employees, that he no longer had the effective consent of Walmart to enter its property. From the plain language of the burglary statute, when the Defendant no longer had Walmart's consent and yet chose to enter its property and commit a theft therein, the Defendant committed a burglary. The Defendant is not entitled to relief on this issue.

## B. Aggregation

The Defendant contends that he was denied his right to a fair trial because the State was allowed to change, from the start of trial to its closing argument, its underlying theory for aggregating some of his theft charges. He contends that the State initially argued that the Defendant's "common scheme, purpose, intent, or enterprise" was a drug habit and then argued during closing that the Defendant was not a drug addict but a professional thief. This, the Defendant argues, deprived him of the opportunity to refute the State's "professional thief" theory. The State responds that its theory of aggregation did not

8

change at closing argument and, thus, did not deprive him of the opportunity to refute the basis for aggregation. We agree with the State.

We are required here to consider the construction and application of the theft aggregation provision, a portion of the grading of theft statute in Tennessee Code Annotated section 39-14-105. Statutory construction presents a question of law, which we review *de novo* with no presumption of correctness accorded the rulings below. *State v. Henderson*, 531 S.W.3d 687, 692 (Tenn. 2017) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013)).

Tennessee Code Annotated section 39-14-105(b) provides:

> (1) In a prosecution for theft of property, . . . the state may charge multiple criminal acts committed against one (1) or more victims as a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise.

> (2) The monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value under this section.

T.C.A. § 39-14-105(b). "The point of aggregating multiple individual thefts into a single count is to charge the defendant with a single felony offense as opposed to multiple misdemeanor thefts, or to raise lower grade multiple felony thefts to a single higher grade felony charge." *State v. Jones*, 589 S.W.3d 747, 756-57 (Tenn. 2019). *Jones* clarified:

> The identity and location of the owner(s) of the property is not relevant. Simultaneous possession of the property by the suspect is not required. Rather, if the evidence establishes that the separate thefts meet any of the criteria actually and expressly set forth in the statute, then the State may aggregate the thefts into a single charge.

*Id.* at 759.

The Defendant contends that the State changed its "theory" of aggregation during its closing argument: the State initially argued to the trial court that the charges should be aggregated because they supported the Defendant's drug habit; then, he contends, during closing argument, it presented to the jury a picture of the Defendant's life as a professional thief.

9

We would first note that the question of aggregation is a determination reached by the trial court, not the jury. The trial court determined, prior to trial, that the State was permitted to aggregate the separate thefts because the convictions shared a common scheme or plan to support the Defendant's drug habit. Thus, any argument made during closing had no bearing on the State's basis for aggregation.

Nevertheless, we conclude that the State properly put forth a theory for aggregation, based on the Defendant's "common scheme, purpose, intent or enterprise" of stealing merchandise from businesses which he would later resell in support of his drug habit. The Defendant is not entitled to relief on this issue.

## C. Sentencing

The Defendant lastly contends that the trial court erred when it sentenced him pursuant to an outdated theft grading scheme that was not in effect at the time of the sentencing hearing. Citing *State v. Menke*, 590 S.W.3d 455 (Tenn. 2019), he argues that the amended theft grading scheme should apply to his convictions. The State responds that the Defendant "at no point" argued this contention to the trial court, and, having failed to raise the issue, is thus entitled only to plain error review of this issue, which the State argues he cannot establish. We agree with the Defendant.

We disagree with the State that the Defendant is only entitled to plain error review because he failed to make an argument to the trial court that he was entitled to the application of the criminal savings statute. The Defendant raised the issue with the trial court, and argument was made by both parties. The State cited *Menke* and noted that the decision was on appeal to our supreme court at the time. Therefore, the issue is properly before us on appeal.

A decision in *Menke* has since been reached and affords the Defendant relief. The *Menke* court addressed the issue of the applicability of the amended theft grading statute, known as the Public Safety Act of 2016, found at Tennessee Code Annotated section 39-14-104(a), which took effect in January of 2017. *See Menke*, 590 S.W.3d at 464-65. The amendment to this section provided the following updated theft grading scheme:

(a) Theft of property or services is:
(b)
(1) A Class A misdemeanor if the value of the property or services obtained is one thousand dollars ($1,000) or less;

(2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred

10

dollars ($2,500);

(3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000)[.]

*Menke*, 590 S.W.3d at 465 (citing 2016 Tenn. Pub. Acts, ch. 906, sec. 5.7.)

The defendant in *Menke*, as here, committed theft prior to the amendments but was sentenced after the effective date. *Id.* at 465. Our supreme court explained that "[a]s a general rule, 'a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense.'" *Id.* at 466 (citations omitted). Our legislature has enacted a Criminal Savings Statute, which requires courts to apply a subsequent statute to a defendant's sentencing if the subsequent statute provides for a lesser penalty. The *Menke* court went on to explain the effect of the savings statute:

When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act *provides for a lesser penalty*, any punishment imposed shall be in accordance with the subsequent act.

*Id.* at 466 (citing T.C.A. § 39-11-112; *State v. Cauthern*, 967 S.W.2d 726, 747 (Tenn. 1998) (emphasis in original). *Menke* concluded definitively that the Criminal Savings Statute applies to the amended theft grading statute. *Id.* at 468. The defendant in *Menke*, however, was not entitled to relief because her sentence for the Class D felony conviction, eleven months and twenty-nine days, was also a proper sentence for her adjusted conviction of a Class A misdemeanor. Therefore, her sentence was proper. *Id.* at 470.

Here, the Defendant committed his offenses in 2016, prior to the amendments to the Public Safety Act taking effect in January of 2017, but he was sentenced in 2018. Therefore, our court's conclusion in *Menke* applies here: the Defendant was entitled to any benefit bestowed upon his convictions by the Criminal Savings Statute. It follows that any sentence the Defendant received for a theft conviction, which would be adjusted by the 2017 amendment, should be reviewed, and a new sentence in line with the updated scheme should be imposed.

11

The Defendant was convicted of thirty-three counts of theft, detailed as follows:

| Conviction | Class of Theft pre-2016 amendment | Class of Theft post-2016 amendment | Counts Affected by amendment |
|---|---|---|---|
| Theft of property valued at less than $500 | Class A misdemeanor | Class A misdemeanor | 1-8, 10, 17, 18, 27, 29, 34, 36, 37 (none affected by amendment) |
| Theft of property valued between $500 and $1,000 | Class E felony | Class A misdemeanor | 11, 14, 16, 20, 23, 25, 31, 35, 39, 44 |
| Theft of property valued between $1,000 and $10,000 | Class D felony | Class E felony if value < $2,500 Class D felony if value > $2,500 (up to $10,000) | 9, 12, 32, 42, 48, 49, 50 |

The above chart shows that some but not all of the Defendant's felony theft convictions were reclassified as to their value, and he will have to be resentenced on those convictions accordingly. Therefore, we remand the Defendant's case to the trial court for a new sentencing hearing with instructions to the trial court to impose new sentences in alignment with the amended theft grading statute.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgments in part, reverse the trial court's judgments in part, and remand the Defendant's case for a new sentencing hearing consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE