FILED

03/17/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 12, 2025 Session

## STATE OF TENNESSEE v. CARMEN NOE GARCIA GUOX

**Appeal from the Circuit Court for Williamson County**
**No. N-CR240084    Joseph A. Woodruff, Judge**

——————————————————

### No. M2025-00047-CCA-R3-CD

——————————————————

The State appeals from the judgment of the trial court sentencing Defendant, Carmen Noe Garcia Guox, to eleven months and twenty-nine days' incarceration for patronizing prostitution from a law enforcement officer posing as a minor.  On appeal, the State contends that the trial court erred by imposing a Class A misdemeanor sentence because Defendant's conviction is a Class B felony offense.  Defendant responds that he entered a best interest plea to a Class A misdemeanor and that the relevant statute does not authorize a Class B felony conviction or sentence.  Upon a thorough review of the record and applicable law, we reverse the judgment of the trial court, vacate Defendant's plea, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Plea Vacated; Case Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Solicitor General; Stacey B. Edmonson, District Attorney General; and Kelly A. Lawrence, Senior Assistant District Attorney General, for the appellant, State of Tennessee.

Venus Niner, Franklin, Tennessee, for the appellee, Carmen Noe Garcia Guox.

# OPINION

## <u>Factual and Procedural Background</u>

This case arises from Defendant's soliciting sex from an undercover police officer, who was posing as a minor sex worker. The parties' stipulation of facts,[1] which was filed before the sentencing hearing, was as follows:

> On November 16, 2023, the Williamson County Sheriff's Department (WCSD), in conjunction with the Tennessee Bureau of Investigation (TBI) and the Spring Hill Police Department (SHPD), conducted a two-day undercover operation in the city of Spring Hill, Williamson County, Tennessee. As part of the operation, law enforcement posted advertisements on several websites that are commonly used to advertise escort services and other illicit sexual activity. The ad also contains a statement that the female is 22 years old. There is a legal disclaimer on the ad that states in part:
>
> > I am a professional service provider. Any fees or compensation paid to me are for my time and companionship only. Any actions that take place within our contracted timeframe are a matter of mutual choice between consenting adults. Any scenarios, fantasy or otherwise, contained in this ad are purely that, they do not constitute any form of contractual obligation. I do not engage in any unlawful acts.
>
> On November 16, 2023, [D]efendant . . . responded to one of the ads via text and ended up communicating with a female TBI agent. The text message exchange between the TBI agent and [D]efendant began at approximately 5:10 p.m., with [D]efendant initiating a text inquiring, "ey [sic] baby are you available?" At approximately 5:16 p.m., [D]efendant called and inquired if the female was available for a quick visit. The female advised it would be $80.00. [D]efendant asked where the female was located, to which she advised she was at a hotel in Spring Hill. [D]efendant advised he was on the way from Columbia and asked if the female was police. The female stated she was 16 years old, to which [D]efendant replied: "16 really?" The female confirmed, to which [D]efendant replied, "I mean, that's illegal . . . you say you're 16 years old?" The female confirmed again,

---

[1] The parties did not agree on the facts during Defendant's plea hearing; the trial court asked them to draft a stipulation of facts for purposes of sentencing.

and [D]efendant advised he was 28 years old, requested the address of the hotel and for a picture of the female.

The female sent a picture of herself from the neck down. [D]efendant sent a picture of himself holding a peace sign in front of his face and texted, "send me your address baby and a pic with two fingers en [sic] your nose." The female sent two more pictures of herself holding the peace sign up as well. At approximately 5:23 p.m., the female advised [D]efendant that the address was 3003 Longford Drive. At approximately 5:44 p.m., [D]efendant texted, "Im here baby" and sent a picture of the hotel lobby, at the female's request. The female advised [D]efendant that she was in room 424.

[D]efendant arrived in the room and asked if there were police. He then stated, "I'm scared . . . you said you were 16." [D]efendant sat on the bed and told the female she looked like she was 20 or 22 and stated that she was pretty. [D]efendant asked if he could go to the bathroom and clean himself, then asked if the female wanted to take a shower with him. [D]efendant went into the bathroom, urinated, washed his genital area, then picked up a pair of female underwear from the banister and sniffed them. After he was finished, he left his pants and belt undone and brought the underwear to the female by the bed. [D]efendant proceeded to take off his boots, then handed the female $100.00 and asked about a condom. [D]efendant removed his pants and shirt and asked the female for a "blowjob" with no condom. At that point, [d]etectives made entry into the room, placed [D]efendant under arrest and took him into custody. [D]efendant was provided Miranda warnings and in response to questioning by Detective Paul Lusk of the [WCSD] [D]efendant responded to questioning that the female told him that she was sixteen (16) years old and that he believed that he would be in more trouble if she was sixteen (16). He stated that he did not recall the posted age in the advertisement.

The parties further agree that copies of the online advertisements, recorded phone call and statements of [D]efendant made at the time of arrest shall be included with this stipulation and made exhibits to this filing.[2]

The February 2024 term of the Williamson County Grand Jury indicted Defendant in Count 1 for "patronizing prostitution from a law enforcement officer posing as a minor," stating that Defendant

---

[2] The online advertisement, call recording, and Defendant's statements are not part of the appellate record.

did unlawfully solicit or hire another person with the intent that the other person engage in prostitution, that person being a law enforcement officer posing as a minor, who [Defendant] reasonably believed to be less than eighteen (18) years of age, in violation of Tennessee Code Annotated [section] 39-13-514, a [C]lass B felony, and against the peace and dignity of the State of Tennessee.

The grand jury indicted Defendant in Count 2 for "solicitation of a law enforcement officer posing as a minor to commit patronizing prostitution," a Class C felony. *See* Tenn. Code Ann. § 39-13-528.

On May 2, 2024, Defendant filed a motion to dismiss the indictment, arguing that he had been charged with "offense[s] that do not exist" because patronizing prostitution is a Class A misdemeanor and solicitation of a minor to commit patronizing prostitution is a Class B misdemeanor. Defendant asserted that Tennessee Code Annotated section 39-13-514(b)(3)(A), which provides that patronizing prostitution from a law enforcement officer posing as a minor is "punishable as trafficking for commercial sex acts under § 39-13-309," only referred to punishment and not the offense classification. Defendant argued that an issue of notice existed if he was indicted for a Class B felony when the offense was a Class A misdemeanor. He averred that the trial court could not "pronounce the proper judgment or penalize [Defendant] proportionately as intended by the legislature." Finally, Defendant argued that the indictment caused a "coercive situation" in favor of the State and that no possibility existed of his entering a knowing and voluntary plea.

The State responded that the legislature amended Code section 39-13-514(b)(3)(A) in 2022 to state explicitly that patronizing prostitution from a law enforcement officer posing as a minor should be punished as trafficking for commercial sex acts, which was at minimum a Class B felony.

The record reflects that a hearing[3] on the motion to dismiss occurred on May 17, 2024, and that the trial court ordered the parties to submit briefs addressing the remedy if the court concluded as a matter of law that Tennessee Code Annotated sections 39-13-514(a)(2), (b)(1), and (b)(3)(A) were in conflict.

On July 2, 2024, the trial court issued an order granting the motion to dismiss in part. The trial court examined Tennessee Code Annotated section 39-13-514 and found that because the legislature had not removed Code section 39-13-514(a)(2) which stated that patronizing prostitution from a law enforcement officer posing as a minor was a Class A misdemeanor, it was simultaneously a Class B felony and a Class A misdemeanor. The

---

[3] The hearing transcript is not part of the appellate record.

trial court concluded that the rule of lenity "requires this [c]ourt to conclude that, as currently charged, the State has limited itself . . . to seeking a conviction for patronizing prostitution as a Class A misdemeanor." The trial court stated that, as a result, the solicitation charge in Count 2 was a Class B misdemeanor. The trial court granted the motion to dismiss "to the extent it seeks to limit [Defendant's] exposure to a Class A misdemeanor" but declined to dismiss the indictment as a whole.

Defendant subsequently requested permission to file an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9, arguing that the trial court had impermissibly amended the indictment; the trial court denied permission to appeal.

On September 4, 2024, Defendant filed a "petition for waiver of trial by jury and request for acceptance of plea of guilty." In the petition, Defendant noted that he had no negotiated plea agreement with the State; he requested to plead guilty "to the Class A misdemeanor" of patronizing prostitution with the sentence to be determined by the trial court. The remainder of the petition set out that Defendant understood his constitutional rights at trial and on appeal and that he wished to waive them and plead guilty.

At the November 5, 2024, plea hearing, defense counsel stated that "we" had an agreement that Defendant would enter a best interest plea with the sentence to be determined by the trial court. When asked to which offense Defendant was pleading, defense counsel responded, "He's going to be pleading to the A misdemeanor of soliciting[4] prostitution." The following exchange occurred:

> [THE STATE]: Judge, just to make the record clear, . . . the State does believe this is a felony offense. We have not agreed that he plead to an A misdemeanor. The [c]ourt has put down an order that [it] would intend to sentence [D]efendant pursuant to an A misdemeanor. So, the State is going to maintain the position that he can plea[d] to the indictment, and the State will advocate that he be sentenced under a felony.

> THE COURT: I have made a ruling in the case that the indictment is defective, and that it fails to charge the defendant with a felony. And [that] the only thing that the State would be permitted to go forward on . . . is a misdemeanor. The State is free to appeal that; it has chosen not to. So, as far as I am concerned, the case, as it stands before me, charges [D]efendant with a misdemeanor. And I'm not going to get involved in parsing the record

---

[4] Defense counsel later clarified that Defendant was pleading to patronizing prostitution, not soliciting prostitution.

- 5 -

or creating avenues for appellate argument[s] that don't exist based upon the current procedural posturing. So, --

[THE STATE]: Well, respectfully Judge, the State has consulted with the AG's office.

THE COURT: Okay, good.

[THE STATE]: And they did not feel that the State has an appeal until the [c]ourt had sentenced[5] [D]efendant . . . which, they believe, is not in accordance with the way that the statute is written. So, I've tried to engage them to appeal prior. And, based upon Your Honor's ruling, . . . they would not do that. They said that there has to be . . . a [judgment] of conviction, in which the State has maintained the position that this is a felony offense, which we have, and that's how he should be sentenced accordingly. Their appeal would lie in the fact, that they believe, that you did not interpret the statute correctly.

THE COURT: Have plea papers been submitted?

[DEFENSE COUNSEL]: Your Honor, we filed a petition to be allowed to plead guilty. That was filed some time ago. And that was -- affirmatively stated that there was no agreement with the State.

THE COURT: Okay.

[THE STATE]: It's not the preference of the State to do it this way or to appear to be obstinate to the [c]ourt. I'm just following what I've been told from the higher ups. That's how we have to proceed. And so, I mean, I'm not trying to be difficult with the [c]ourt. It's just --

THE COURT: I know you are not trying to. You are succeeding, nevertheless, even though you're not trying.

[DEFENSE COUNSEL]: Your Honor, in her defense, she has been wonderful to work with in this tough situation. And I understand why she's

---

[5] We note that, generally, if a defendant "simply plead[s] guilty to all of the offenses with which he is charged, the State will have no grounds to contest the plea." *Frazier v. State*, 495 S.W.3d 246, 250 (Tenn. 2016).

- 6 -

doing what she's doing. And as far as the defense goes, we understand why she's doing what she is doing.

THE COURT: Alright. So, [defense counsel], your client wishes to enter a plea of guilty to misdemeanor [patronizing] prostitution?

[DEFENSE COUNSEL]: Yes.

After being sworn, Defendant testified that he signed the petition, that defense counsel had explained it to him, and that he understood that he was giving up his rights by entering a best interest plea, including the right to go to trial, to have the State prove his guilt, and to appeal the conviction. Defendant agreed that the statements in the petition were true, that he was not under the influence of any substances, that he understood the nature of his actions, and that he was entering his plea voluntarily. He further agreed that he had not been threatened or promised anything in exchange for his plea.

After the State and defense counsel recited their versions of the facts, which were roughly equivalent to the later-filed stipulation of facts, the trial court questioned the State about the online advertisement's statement that the undercover officer was an adult; the State explained that a person under a certain age "could not legally post an ad[.]" The trial court stated that it had "some genuine concern" about whether the State could prove beyond a reasonable doubt that Defendant intended to patronize prostitution "with someone who was a minor, at the time." The court noted that the case involved "so many equivocal facts" and that the court was unsure whether a rational trier of fact could find that the Defendant committed a crime "beyond simply the misdemeanor of patronizing prostitution."

Defense counsel stated that Defendant wanted to "lock down this A misdemeanor," that Defendant "may not be in this same position" in front of another judge, and that Defendant thought the best step was to "move forward and try to end this case." When asked whether he "want[ed] to plead guilty to the lesser included offense of patronizing prostitution, an A misdemeanor" because he believed it was in his best interest, Defendant answered affirmatively. The trial court asked defense counsel how the court could accept the plea when Defendant disputed the indictment's statement that he believed the undercover officer to be a minor. Defense counsel responded that she was

trying to think of the long game here. If the Court of [Criminal] Appeals disagrees with you, what position are we in? I think this position is going to be better if he has [pleaded] guilty, by choice, and been convicted of the A misdemeanor. Because you cannot say that a knowing plea holds him to the plea but to a B felony.

- 7 -

Defense counsel clarified for the trial court that Defendant's best interest plea was to Count 1 of the indictment. The trial court stated that it had "determined that[,] as alleged, Count 1 could not be punished as a B felony but can only be punished as an A misdemeanor" and that it would accept the best interest plea to Count 1 "under those circumstances." The State dismissed Count 2 of the indictment.

The trial court held a sentencing hearing on December 13, 2024. At the hearing, Herberto Barrera testified that he was the pastor at Defendant's church, that Defendant was a deacon, and that he had known Defendant, his wife, and his two children since 2019. Pastor Barrera stated that he had discussed with Defendant the events leading to his arrest, that Defendant was "very repentant," and that Defendant had been "trying to grow in his relationship with the Lord." Pastor Barrera opined that Defendant had been honest with him, that Defendant had a "sincere desire" to stay out of trouble, and that the church community supported Defendant. Pastor Barrera stated that Defendant worked for a construction company and painted cars, that Defendant was committed to his family and job, that Defendant was responsible, and that Pastor Barrera would continue supporting Defendant spiritually.

Trinidad Portillo testified that he had known Defendant for fifteen years and that they met at church. Mr. Portillo stated that he had loaned Defendant money in the past, that Defendant always repaid it, and that he considered Defendant to be trustworthy. He noted that, within six months, Defendant had repaid him $50,000 of bond money related to this case.

Mr. Portillo testified that Defendant performed mechanic and vehicle "body work" for him, that Defendant also owned a construction company, and that Defendant employed two people. Mr. Portillo stated that Defendant had honestly discussed with him the circumstances of the present case, that Defendant had asked Mr. Portillo for support "to make sure that he never re-offends again," and that he believed Defendant would stay out of trouble.

On cross-examination, Mr. Portillo testified that Defendant told him that he was charged with "[p]rostitution soliciting." He agreed that Defendant was married with children.

The trial court asked the parties what enhancement factors applied, and the parties and the trial court discussed that Defendant had two prior convictions in Davidson County General Sessions Court for driving without a license, which were both entered on September 18, 2012; Defendant had been sentenced to six months of probation after serving ten days in jail. *See* Tenn. Code Ann. § 40-35-114(1). Relative to mitigating factors, the State acknowledged that the conduct did not cause or threaten serious bodily

injury and that Defendant had community support and was employed. *See* Tenn. Code Ann. § 40-35-113(1), (13).

The State argued that Defendant should receive the minimum Range I sentence for a Class B felony, which was eight years. The State requested that the entire sentence be served on probation. The State also argued that Defendant should have to register as a sex offender but acknowledged that, if the trial court imposed a misdemeanor sentence, Defendant would "not [be] subject" to registration.

The trial court found that enhancement factor (1) and mitigating factors (1) and (13) applied. The trial court stated as follows:

Because of an incongruity in the statutory language, the [c]ourt has previously concluded that [] Defendant may only be sentenced to a misdemeanor sentence. In light of the underlying facts and circumstances of the offense, the [c]ourt sentences []the Defendant as follows:

To a period of confinement in the Williamson County Jail for a period of 11 months and 29 days;

Suspended to supervised probation after service of 25 days, for which [] Defendant has jail credit for the period of incarceration he already has served[.]

The State timely appealed.

## ANALYSIS

*a. Offense Classification*

On appeal, the State contends that the trial court improperly imposed a misdemeanor sentence, arguing that Tennessee Code Annotated section 39-13-514 creates two separate offenses: "patronizing prostitution," a Class A misdemeanor, and "patronizing prostitution from a law enforcement officer posing as a minor," a Class B felony. The State avers that the trial court "conflat[ed] these separate offenses and conclud[ed] that the different offense classifications rendered the statute ambiguous." The State argues that the statutory language is not ambiguous as to offense classification.

In the alternative, the State submits that the legislative history from 2022, when Code section 39-13-514(b)(3)(A) was amended to add patronizing prostitution from a law

enforcement officer posing as a minor to the list of circumstances to be punished as commercial sex trafficking, supports its position.

Defendant responds that Code section 39-13-514(b)(1)'s statement that patronizing prostitution is a Class A misdemeanor is the "only language addressing the level of offense[.]" Defendant asserts that, "without more," the language in Code section 39-13-514(b)(3)(A) does not classify patronizing prostitution from a law enforcement officer posing as a minor as a Class B felony. Defendant remarks that "[i]t is illogical to say an offense is a misdemeanor, then say, it is punishable as a Class B felony, and of course, (b)(3)(A) does not say that." Defendant argues without citation to authority that the phrase "is punishable as trafficking for commercial sex acts under § 39-13-309" only "speaks to the manner of service, i.e., whether it is punishable by a fine or whether the defendant would be eligible for probation."

Relative to the trial court's determination that Code section 39-13-514 is ambiguous, Defendant disagrees and argues that "both parts of the statute can be read together as long as no words are added and no words are removed." Defendant argues, alternatively, that the trial court properly applied the rule of lenity to resolve the inconsistency.

Our review of the sentence in this case requires us to first determine whether the offense for which the trial court sentenced Defendant was a felony or a misdemeanor, which involves statutory interpretation; this is a question of law, which we review de novo with no presumption of correctness. *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013) (citing *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)). Our supreme court has held that "a trial court necessarily abuses its discretion when it commits an error of law." *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

"The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope." *Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 52-53 (Tenn. 2018). The meaning of a statute at the time it was issued "is discerned through consideration of the statutory text in light of 'well-established canons of statutory construction.'" *Deberry*, 651 S.W.3d at 924 (quoting *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)).

"In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language." *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994). This court presumes that "every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General

Assembly is not violated by so doing." *Springer*, 406 S.W.3d at 533 (citing *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010)); *see Deberry*, 651 S.W.3d at 925.

When the language of a statute is clear and unambiguous, this court "must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). A statute is ambiguous if the language "is susceptible [to] more than one reasonable interpretation[.]" *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001).

Tennessee Code Annotated section 39-13-514 provides as follows:

(a) A person commits an offense under this section:
   (1) Who patronizes prostitution; or
   (2) When a person patronizes prostitution where the subject of the offense is a law enforcement officer or a law enforcement officer eighteen (18) years of age or older posing as a minor.

(b)
   (1) Patronizing prostitution is a Class A misdemeanor.
   (2) Patronizing prostitution within one and one-half (1.5) miles of a school shall, in addition to any other authorized punishment, be punished by no less than seven (7) days of incarceration and by a fine of not less than one thousand dollars ($1,000).
   (3)
      (A) Patronizing prostitution from a person who is younger than eighteen (18) years of age, has an intellectual disability, or is a law enforcement officer posing as a minor is punishable as trafficking for commercial sex acts under § 39-13-309.
      (B) Nothing in this subdivision (b)(3) shall be construed as prohibiting prosecution under any other applicable law.

(c) As used in subsection (b), "school" means all public and private schools that conduct classes in any grade from kindergarten through grade twelve (K-12).

(d) It is not a defense to a violation of this section that:
   (1) The subject of the offense is a law enforcement officer;
   (2) The victim of the offense is a minor and consented to the offense; or

- 11 -

(3) The solicitation was unsuccessful, the conduct solicited was not engaged in, or the law enforcement officer could not engage in the solicited offense.

In our view, the statutory language is not ambiguous. Subsection (a) distinguishes two scenarios under which a person commits an offense—(1) patronizing prostitution *or* (2) patronizing prostitution from a law enforcement officer or a law enforcement officer posing as a minor. As this court recently discussed,

> The word "or" is disjunctive; it usually indicates an alternative between two or more options. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (explaining that the word "or" is "almost always disjunctive"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("Under the conjunctive/disjunctive canon, and combines items while or creates alternatives."). As used in its normal and ordinary sense, the word "or" typically signals an alternative, indicating that the reader should treat the various parts of the sentence it connects separately.

*State v. Capps*, No. E2023-01419-CCA-R3-CD, 2024 WL 5135477, at *6 (Tenn. Crim. App. Dec. 17, 2024), *perm. app. denied* (Tenn. May 23, 2025). Accordingly, the use of "or" between subsections (a)(1) and (2) is properly understood to delineate separate offenses.

Continuing to Tennessee Code Annotated section 39-13-514, subsection (b)(1) provides that *patronizing prostitution*, the specific offense named in subsection (a)(1), is a Class A misdemeanor. Subsection (b)(3)(A) provides that *patronizing prostitution from a person who is a law enforcement officer posing as a minor*, the specific offense named in 514(a)(2), is punishable as trafficking in a commercial sex act pursuant to Tennessee Code Annotated section 39-13-309. Tennessee Code Annotated section 39-13-309(a) codifies the offense and the punishment for "trafficking a person for a commercial sex act." Tennessee Code Annotated section 39-13-309(c)(1) provides that "[a] violation of subsection (a) is a Class B felony, except as provided in subdivision (c)(2)." Subdivision (c)(2) states that "[a] violation of subsection (a) is a Class A felony if the victim of the offense is a child more than twelve (12) years of age but less than eighteen (18) years of age."

Put simply, the offense classification for patronizing prostitution is provided by subsection 514(b)(1), the offense classification for patronizing prostitution from a person who is a law enforcement officer posing as a minor is provided by subsection 514(b)(3). We disagree with Defendant's assertion that subsection (b)(3)(A) does not override subsection (b)(1)—the purpose of subsection (b)(3)(A) is to override subsection (b)(1)

- 12 -

when certain facts are present. To find otherwise would be to conclude that subsection (b)(3)(A) has no purpose. *Cf. Springer*, 406 S.W.3d at 533 (stating that this court presumes "every word in the statute has meaning and purpose").

We note that Defendant's assertion that the phrase "is punishable as" only refers to the manner of service is without merit. Defendant ignores that several criminal statutes provide an offense classification by internal reference to another criminal statute—most notably, the theft grading statute is used to determine the offense classification of forgery, vandalism, passing worthless checks, criminal simulation, new home construction fraud, small business loan fraud, and fraudulent use of a credit card. *See* Tenn. Code Ann. §§ 39-14-105 (theft grading statute); -114(c) (forgery); -115(b) (criminal simulation); 118(c)(1) (fraudulent use of a credit card); -121(f) (passing worthless checks); -137(b) (using fraud to qualify for a small business loan); -408(c)(1)(A) (vandalism); -154(c)(1) (new home construction and home improvement fraud).

When read in the context of the entire statute, the legislature has clearly communicated in subsection (b)(3)(A) that patronizing prostitution from a law enforcement officer posing as a minor is to be punished as a Class B felony. The trial court erred in its determination that Defendant could only be sentenced for a Class A misdemeanor and, by extension, abused its discretion in imposing a misdemeanor sentence.

### b. *Knowing and Voluntary Plea*

Having concluded that the trial court erred in its determination of the offense classification, we must consider the appropriate remedy. The State's issue on appeal has been narrowly framed to address only the trial court's sentencing decision; however, the trial court's error is intertwined with the validity of the plea itself. After receiving and carefully considering supplemental briefs from the parties, we think that the ends of justice and principles of judicial efficiency are best served by considering the plea issue sua sponte.

We are mindful of our supreme court's admonition in *State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022), that the "principle of party presentation is a defining feature of our adversarial justice system" and that the "judicial role is not to research or construct a litigant's case or arguments for him or her[.]" (citations and internal quotation marks omitted). In *Bristol*, our supreme court also emphasized the importance of "'ensur[ing] that the [parties] are afforded an opportunity to develop fully their opposing positions on an issue[.]'" *Id.* at 925 (quoting *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018)).

The *Bristol* court also discussed, though, that the plain error doctrine, as embodied in Tennessee Rules of Appellate Procedure 13(b) and 36(a), "afford[s] appellate courts

discretion to consider issues that have not been properly presented in order to achieve fairness and justice." *Id.* at 927 (internal quotation marks and citations omitted). Appellate courts should "sparingly" exercise this discretion, and our supreme court has stressed that this court "must give the parties fair notice and an opportunity to be heard on the dispositive issues." *Id.* (internal quotation marks and citations omitted). Accordingly, we requested that the parties file supplemental briefs addressing the knowing and voluntary nature of Defendant's plea.

The State argues that Defendant "cannot collaterally attack his guilty plea on direct appeal, even under plain-error review," relying upon our supreme court's opinion in *State v. Wilson*, 31 S.W.3d 189, 193 n.10, 195 (Tenn. 2000). The State avers that, because its issue on appeal is restricted to the trial court's sentencing determination, this court's authority is limited to remanding the case for resentencing. The State notes that Defendant can file a motion to withdraw his guilty plea before resentencing pursuant to Tennessee Rule of Criminal Procedure 32(f) or, after resentencing, a petition for post-conviction relief.

Defendant responds that he is not collaterally attacking his guilty plea, but that, if this court concludes that his conviction is for a Class B felony, his plea was unknowingly and involuntarily entered because he was "misguided by the trial court itself."

Relevant to the State's threshold argument, in *Wilson*, the defendant filed a pretrial motion to seek a competency evaluation; at the hearing, the trial court denied the motion but stated that, if the defendant was found guilty at trial, the court would order a mental evaluation for purposes of sentencing. *Id.* at 191. After a recess, the defendant decided to plead guilty. *Id.* On direct appeal, the defendant argued, in relevant part, that he was incompetent to plead guilty. *Id.* This court reframed the issue to consider whether the defendant's plea was knowing and voluntary pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969), and this court concluded that it was not. *Id.*

Our supreme court reversed, holding that this court did not have jurisdiction "to hear and determine, on direct appeal, the voluntariness of [the defendant's] pleas of guilty." *Id.* at 192. The court recounted that the right to appeal after a guilty plea was "severely limited" to the situations enumerated in Tennessee Rule of Criminal Procedure 37(b) or Tennessee Rule of Appellate Procedure 3(b). After noting that the defendant's appeal did not involve a certified question of law, our supreme court reasoned:

The only exception into which [the defendant's] appeal may fit is Tenn. R. Crim. P. 37(b)(2)([C]),[6] which permits an appeal after a guilty plea if "[t]he error(s) complained of were not waived as a matter of law by the plea of guilty . . . or otherwise waived, and if such errors are apparent from the record of the proceedings *already had* . . . ." Tenn. R. Crim. P. 37(b)(2)([C]) (emphasis added); *see also* Tenn. R. App. P. 3(b)(2). The advisory commission comments to the rule explain that a defendant should be permitted to appeal under Tenn. R. Crim. P. 37(b)(2)([C]) only in cases where "the record clearly reflects an invalidating error, such as the clear denial of the right to counsel or a conviction under an invalid statute, wherein it would be judicially inefficient to require a post-conviction collateral attack when the error is apparent upon the face of the *existing record.*" Tenn. R. Crim. P. 37(b)(2)([C]) advisory commission comments (emphasis added).

Unlike the denial of the right to counsel or conviction under an invalid statute, whether a defendant knowingly and voluntarily entered a guilty plea will rarely, if ever, be apparent from a record of the "proceedings already had . . . ." Tenn. R. Crim. P. 37(b)(2)([C]); *see* Tenn. R. App. P. 3(b)(2). Such is not apparent in the record before us[.]

*Id.* at 193.

Defendant's case, like *Wilson*, involves an error that fits within Tennessee Rule of Criminal Procedure 37(b)(2)(C). We conclude that Defendant's case is the rare exception to the general rule articulated in *Wilson*. Although, ordinarily, the voluntary and knowing nature of a plea is not apparent from the proceedings already had, in this case, the trial court's error, Defendant's understanding of the consequences of his plea, and how the court's error impacted Defendant's decision to enter his plea are apparent from the face of the record. Accordingly, "it would be judicially inefficient to require a post-conviction collateral attack when the error is apparent upon the face of the *existing record*." *Id.* The same reasoning applies to a potential motion to withdraw Defendant's plea. Therefore, we will exercise plain error review.

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a

---

[6] We note that the *Wilson* court cited to Tennessee Rule of Criminal Procedure 37(b)(2)(iii), which is analogous to the current Rule 37(b)(2)(C).

- 15 -

clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Id.* at 640-41; *see State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. Defendant bears the burden of persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

First, the record clearly establishes what occurred in the trial court. At the plea hearing, defense counsel candidly stated that Defendant was relying upon the trial court's ruling regarding the offense classification to "lock down this A misdemeanor," noting that Defendant "may not be in this same position" in front of another judge. Defense counsel further stated, "I think this position is going to be better if he has [pleaded] guilty, by choice, and been convicted of the A misdemeanor. Because you cannot say that a knowing plea holds him to the plea but to a B felony." Defendant's decision to enter a plea was driven by a desire to limit his exposure to a misdemeanor conviction and sentence.

Second, a clear and unequivocal rule of law was breached. When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b); *Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012), *no perm. app. filed*. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea[.]" *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats[.]" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him;

the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244. A reviewing court must examine the totality of the circumstances to determine if a guilty plea was knowing and voluntary. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

Here, we conclude that Defendant's plea was not knowingly and voluntarily entered because the statements made to Defendant by the trial court regarding the consequences of the plea were erroneous. Defendant notes in his brief, and the record reflects, that his desire to avoid a felony conviction and sentence was "top of mind" in his decision to enter a plea rather than proceed to trial. Therefore, a clear and unequivocal rule of law was breached.

Third, a "substantial right is one that is so fundamental as to reflect upon the fairness, integrity or public reputation of judicial proceedings." *State v. Cooper*, 321 S.W.3d 501, 506-07 (Tenn. 2010) (internal citation and quotation marks omitted). Defendant's unknowing and involuntary plea adversely affected his right to due process of law, which is undisputedly substantial. *See Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (stating that when a guilty plea is not entered knowingly, voluntarily, and intelligently, "the defendant has been denied due process and the guilty plea is void") (citing *Boykin*, 395 U.S. at 243 n.5).

Fourth, Defendant did not waive the issue for tactical reasons. Defense counsel clearly stated on the record that the reason Defendant was pleading guilty was to "lock in" a misdemeanor conviction following the trial court's determination that the indicted offense was a Class A misdemeanor.

Finally, consideration of the error is necessary to do substantial justice. Defendant would not have pleaded guilty without the trial court's assurance that his conviction and sentence would be for a Class A misdemeanor. As stated above, the unique facts of this case make the error so readily apparent that "it would be judicially inefficient to require a post-conviction collateral attack," or a motion to withdraw the plea, "when the error is apparent upon the face of the *existing record*." *Wilson*, 31 S.W.3d at 193.

Because the five factors for plain error relief have been met, we reverse the judgment of the trial court, vacate Defendant's plea, and remand the case for further proceedings consistent with this opinion.

## Conclusion

In light of the foregoing and the record as a whole, the judgment of the trial court is reversed, and Defendant's plea is vacated. We remand the case for further proceedings consistent with this opinion.

_s/ Robert L. Holloway, Jr._
ROBERT L. HOLLOWAY, JR., JUDGE